Max L. COWEN, Plaintiff-Appellant,

v.

NEW YORK STOCK EXCHANGE and Mohawk Valley Investing Company, Defendants-Appellees.

No. 248, Docket 30814.

United States Court of Appeals Second Circuit.

Argued Dec. 8, 1966.

Decided Jan. 24, 1967.

Daniel S. Cohen, Utica, N. Y., for appellant.

William E. Jackson, New York City (Milbank, Tweed, Hadley & McCloy, New York City, Attorneys; Samuel L. Rosenberry, Isaac Shapiro and Patrick Owen Burns, New York City, and Evans, Pirnie & Burdick and Hugh R. Jones, Utica, N. Y., of counsel), for appellee New York Stock Exchange.

John M. Liddy, Utica, N. Y. (Ferris, Hughes, Dorrance & Groben, Utica, N. Y., on the brief), for appellee Mohawk Valley Investing Co.

Before LUMBARD, Chief Judge, and HAYS and FEINBERG, Circuit Judges.

HAYS, Circuit Judge.

Plaintiff, Max L. Cowen, appeals from an order of the United States District Court for the Northern District of New York dismissing his amended complaint, which seeks treble damages under the Sherman and Clayton Acts, 15 U.S.C. §§ 1, 15,[1] and granting summary judgment to the defendants. We find no error and affirm the order of dismissal.

Plaintiff was employed by defendant Mohawk Valley Investing Company, a member firm of the New York Stock

---

1. § 1. TRUSTS, ETC., IN RESTRAINT OF TRADE ILLEGAL; EXCEPTION OF RESALE PRICE AGREEMENTS; PENALTY.

Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal * * *

§ 15. SUITS BY PERSONS INJURED; AMOUNT OF RECOVERY.

Any person who shall be injured in his business or property by reason of any-thing forbidden in the antitrust laws may sue therefor in any district court of the United States in the district in which the defendant resides or is found or has an agent, without respect to the amount in controversy, and shall recover threefold the damages by him sustained, and the cost of suit, including a reasonable attorney's fee.

Exchange, from 1957 until his discharge on March 22, 1961. Early in 1961 Cowen purchased a convertible bond from each of three sisters whose deceased father had been a client of his. Cowen purchased the bonds knowing that the deceased father was a co-owner of each bond and that the father's name had been endorsed on the bonds without authority after his death. Cowen paid less than the market price for the bonds. He converted them into stock which he sold at a profit through an account opened in his wife's name with Bache & Company at Utica, New York.

When these facts became known to Mohawk in March, 1961, plaintiff was summoned to the office of A. James Eckert, Jr., then president of the Company, and was questioned. Cowen admitted that he had engaged in the transaction which has been described. He made restitution to Mohawk of his $500 profit. Mohawk returned the money to the three sellers of the bonds and dismissed Cowen from its employ.

In 1963, pursuant to the Constitution and Rules of the Exchange, plaintiff brought an arbitration proceeding against Mohawk claiming that Mohawk had unfairly dismissed him and had acted to prevent him from obtaining other employment in the securities industry. Five arbitrators were appointed, in accordance with Exchange practice, three of them having no connection with the securities business. After hearing the case the arbitration board dismissed plaintiff's complaint.[2]

Plaintiff contends that the Exchange, acting through Walter W. Coleman, an Assistant Director in the Department of Member Firms, without affording him an opportunity to be heard, instructed Mohawk to terminate plaintiff's employment and to inform bonding companies of the reasons for his dismissal. He argues that the Exchange's action violates section 1 of the Sherman Act, 15 U.S.C. § 1, and that under Silver v. New York Stock Exchange, 373 U.S. 341, 83 S.Ct. 1246, 10 L.Ed.2d 389 (1963) the failure to hold a hearing deprives the Exchange of the defense that it was acting pursuant to its statutory duty to insure fair dealing and to protect investors. See 15 U.S.C. §§ 78f(b), (d).

In the *Silver* case, the petitioners were over the counter broker-dealers in securities who were not members of the New York Stock Exchange. Essential to their business were direct wire connections with member firms of the Exchange in New York. The Exchange first granted temporary approval of these wire connections and, then, on the ground of certain alleged misbehavior, caused the connections to be discontinued without any prior notice to the petitioners or any opportunity to be heard. The Supreme Court held that under those circumstances the Exchange "plainly exceeded the scope of its authority under the Securities Exchange Act to engage in self-regulation and therefore has not even reached the threshold of justification under that statute for what would otherwise be an antitrust violation" (373 U.S. at 365, 83 S.Ct. at 1261). That holding is predicated on the finding that "[n]otwithstanding their prompt and repeated requests, petitioners were not informed of the charges underlying the decision to invoke the Exchange rules and were not afforded an appropriate opportunity to explain or refute the charges against them." 373 U.S. at 361, 83 S.Ct. at 1259.

■ Here the plaintiff was made aware by Mohawk of the precise charges against him and conceded the truth of those charges. There is, therefore, no occasion for a hearing, even if we accept as true Cowen's allegation that the Exchange forced his dismissal.[3] It is clear

2. In the present case the claim against Mohawk is based entirely on its having been a co-conspirator with the Exchange.

3. In the view we take of the case we need not pass on the Exchange's contention

that the plaintiff has failed "to set forth such facts as would be admissible in evidence" (Fed.R.Civ.P. 56(e)) showing that the Exchange forced Mohawk to dismiss him.

that his conduct did not comport with the requirements of the Securities Exchange Act and the Rules of the New York Stock Exchange (see 15 U.S.C. §§ 78f(b), (d), 78s(d); Rule 345(c), Rules of the New York Stock Exchange); his discharge is therefore an instance "of exchange self-regulation which fall[s] within the scope and purposes of the Securities Exchange Act [and] may be regarded as justified in answer to the assertion of an antitrust claim." Silver v. New York Stock Exchange, supra, 373 U.S. at 361, 83 S.Ct. at 1259. Indeed, even absent a statutory duty of self-regulation such as that under the Securities Exchange Act, similar self-regulatory activities involving refusals to deal have been held not to violate the antitrust laws. See Deesen v. Professional Golfers Ass'n, 358 F.2d 165 (9th Cir.), cert. denied, 385 U.S. 846, 87 S.Ct. 72, 17 L.Ed.2d 76 (1966). See generally, Note, Trade Association Exclusionary Practices: An Affirmative Role for the Rule of Reason, 66 Colum.L.Rev. 1486 (1966).

The order dismissing the complaint and granting summary judgment for the defendant is affirmed.