**John J. VILLANI and Donald Eucker, Plaintiffs,**

v.

**NEW YORK STOCK EXCHANGE, INC., Defendant.**

**Fergus M. SLOAN, Jr., Plaintiff,**

v.

**NEW YORK STOCK EXCHANGE, INC., Defendant.**

**Nos. 72 Civ. 1765, 72 Civ. 1516.**

United States District Court,
S. D. New York.

Oct. 3, 1972.

---

———◆———

Kraft & Hughes, Newark, N. J., for plaintiffs John J. Villani and Donald Eucker.

Olwine, Connelly, Chase, O'Donnell & Weyher, New York City, for plaintiff Fergus M. Sloan, Jr.

Milbank, Tweed, Hadley & McCloy, New York City, for defendant.

**LASKER, District Judge.**

In these two related actions plaintiffs Eucker, Villani and Sloan move for preliminary injunctions to restrain the New York Stock Exchange ("Exchange") from proceeding with disciplinary hearings against them for alleged violations of certain rules and regulations of the Exchange and the federal securities laws.

█ The facts underlying the contentions of both sets of plaintiffs are substantially similar. However, while both sets advance common grounds for the preliminary injunctions, each presses grounds peculiar to it. In both actions, plaintiffs seek injunctions prohibiting defendants from holding alleged unfair and impartial hearings, as required by the Rules of the Exchange, the Securities Exchange Act of 1934 ("the Act") and the due process clause of the Fifth Amendment [1] on the grounds that 1) under the Exchange rules they will not be permitted to be represented by legal counsel at the hearings; and 2) since the Exchange has instituted a separate civil action in this court against them and the other former partners of Orvis Bros. & Co. ("Orvis") based on the same charges as those brought in the disciplinary proceeding, it cannot render an impartial judgment as to those charges. Furthermore, Sloan contends that the procedures are unfair because the Exchange refuses to allow him to inspect all documents relating to his case in the Exchange's possession.

Eucker and Villani further ask for an order enjoining the Exchange 1) from failing to approve their applications to take responsible managerial positions with other member firms; and 2) from failing to permit Orvis' assets to be used to pay attorney's fees for the defense of the former partners.

## FACTS

Until 1970 Villani, Eucker and Sloan were partners in Orvis, a member firm of the Exchange. Beginning in 1969 Orvis began to suffer severe financial losses so that in June of 1970 the Exchange, by virtue of its authority under the Act, ordered the firm's liquidation.

After determining that Orvis was running a deficit of five million dollars, the Exchange, pursuant to a liquidation agreement signed by the partners of Orvis, including plaintiffs, paid out that sum to the public customers of Orvis from its Special Trust Fund.

The Exchange then began an investigation into the Orvis collapse, which culminated in charges being brought by the Exchange against the partners of Orvis. The plaintiffs formally answered the charges, denying any wrongdoing, and requested a formal hearing, permission to be represented by counsel, and the opportunity to inspect all documents in the

---

[1]. It is now beyond dispute that the Fifth Amendment due process requirements as to federal action apply to the disciplinary hearings conducted by the Exchange. Such hearings are conducted under the self-regulatory power conferred upon it by a federal agency, the Securities & Exchange Commission. In Silver v. New York Stock Exchange, 373 U.S. 341, 83 S.Ct. 1246, 10 L.Ed.2d 389 (1963), the court stated that the Exchange Act of 1934 imposed upon the Exchange the requirement that it comply with traditional notions of "fair procedures," at p. 364, 83 S.Ct. 1246. See Intercontinental Indus., Inc. v. American Stock Exchange, 452 F.2d 935 (5th Cir. 1971) where, in connection with a delisting of stock, the court held that the American Stock Exchange was subject to the requirements of the due process clause of the Fifth Amendment.

Exchange's possession relating to their cases.

The Exchange advised the plaintiffs that they would be permitted to have counsel present in the hearing room but that pursuant to Section 1(d) of Article 5 of its constitution, counsel would not be allowed to address the hearing panel or examine witnesses. The Exchange refused to open its files to plaintiffs, but consented to make available specifically identified documents. According to Sloan's counsel a representative of the Exchange stated that the Exchange would use against Sloan only those documents of which it had sent him copies.

October 5th, 1971, a week after the charges were brought against the plaintiffs, the Exchange instituted a civil action in this court, New York Stock Exchange v. Sloan et al., 71 Civ. 2913, to recover from all the Orvis partners, as well as its accounting firm, the five million dollars that the Exchange had paid out from the Special Trust Fund. The claims in the civil suit are substantially identical to the charges specified in the disciplinary actions. Various partners of Orvis, including Sloan, have asserted counterclaims in the civil suit, contending that it was the Exchange, and not the partners, which actually caused the damages complained of.

After leaving Orvis, Villani and Sloan were employed as registered representatives with other member firms. The Exchange approved their applications "conditionally" pending the resolution of the disciplinary charges. On its own accord, one of the firms determined to terminate Sloan's employment while the charges were pending. Neither Sloan nor Eucker is presently employed by a member firm.

Since the filing of these motions, on May 18th, 1972, counsel for the Exchange, Milbank, Tweed, Hadley & McCloy, has informed the court by letter that the Board of Governors of the Exchange approved various recommendations to change the hearing procedures in disciplinary proceedings conducted by the Exchange. On September 5th, 1972, counsel for the Exchange further informed the court that the membership of the Exchange as well as the SEC had approved the proposals.

Section 23, Article XIV of the constitutional amendment, which abolishes the so-called "no-counsel rule," reads:

"A person, firm or corporation shall have the right to be represented by legal or other counsel in any hearing and review thereof held pursuant to the provisions of this Article and in any investigation before any committee, officer or employee of the Exchange authorized by the Board of Directors."

Another significant amendment to the Exchange's procedures is the establishment of a Hearing Panel of three persons—to be composed of two fellow members (and allied members), who are not members of the Board of Directors, and headed by a Hearing Officer. The Hearing Officer is to be a member of the staff of the Exchange. He will act as Chairman of the Panel, and will have no other Exchange duties relating to investigation or preparation of disciplinary matters. The panel will decide the case before it by vote of the majority, and will assess a penalty, if any. Either the Department bringing the charges or the accused may appeal an adverse determination to the Board of Directors. The Board may delegate the hearing of the appeal to a committee of its members for recommendation to the full Board.

Under the procedures in existence at the time the motions were filed, the accused would have been "tried" before a panel of three members of the staff of the Department of the Exchange which instituted the charges. That panel determined the accused's guilt or innocence, and, if the determination was guilty, the Department bringing the charges imposed the penalty. Appeals, permitted to be taken only by the accused, were heard by the Advisory Committee of the Board of Governors, which committee then made its recommendation for Board action in the appeal.

By letter dated May 18th, 1972, counsel for Sloan stated that in his view the then proposed amendments do not dispose of the constitutional questions raised by Sloan's motion. First, counsel argued that, assuming the first two members of the proposed Hearing Panel can be impartial, the fact that the Chairman of the Panel would be an exchange employee would deny plaintiff his rights under the Fifth Amendment. Second, counsel pointed out that the right of appeal to the Board of Directors—the individual plaintiffs in the civil action—leaves the situation substantially unchanged.

## DISCUSSION

### 1—RIGHT TO COUNSEL

Since counsel for the Exchange has represented [2] that Section 23, abolishing the "no-counsel rule", would apply retroactively so that the hearings on the charges against the plaintiffs will be conducted under the revised procedures, this sector of the motion is rendered moot.

### 2—HEARING PROCEDURES

The amendments with respect to the make-up of the hearing panel appear sufficient to defeat the constitutional objections raised to the initial hearing procedure.

In the administrative process it is the norm for the agency to act both as accuser and trier: such a mixed function dos not constitute a denial of due process. See Intercontinental Indus., Inc. v. American Stock Exchange, 452 F.2d 935 (5th Cir. 1971), where, on a petition for review to the Fifth Circuit of an order of the S.E.C. granting the American Stock Exchange the right to delist the common stock of a corporation, the court held there was no denial of due process when a committee of the exchange first conducted an investigative hearing and then sat with the Board of Governors of the exchange while the entire Board considered the delisting application. The new exchange procedures relevant here provide that the members of the Hearing Panel shall be different persons and perform a different function from that of the personnel who investigate and institute disciplinary hearings, and provides that they shall not be Directors of the Exchange (the plaintiffs in the civil suit).[3] Such a bifurcation of authority is the classic model for determination of litigated matters by an administrative agency.

As we conclude that a panel so constituted can be presumed to be impartial with regard to matters arising internally within the Exchange, so we conclude that the same group can be presumed not to be prejudiced against the plaintiff merely because the Exchange has instituted a suit against them in this court. Where the relief requested is extraordinary—the grant of a preliminary injunction—such a presumption of regularity should be swept aside only by the presentation of persuasive evidence of personal, actual bias. Stated otherwise, the litigant must demonstrate that the Panel has "in some measure adjudged the facts as well as the law of [the case] in advance of hearing it." Gilligan, Will & Co. v. S.E.C., 267 F.2d 461 at 469 (2nd Cir.) cert. denied, 361 U.S. 896, 80 S.Ct. 200, 4 L.Ed.2d 152 (1959). The fact that the Board of Directors, now a separate functioning body from the Hearing Panel, has instituted civil litigation against persons who will appear before the Hearing Panel does not overcome this presumption. See Federal Trade Commission v. Cement Institute, 333 U.S. 683 at 702–703, 68 S. Ct. 793, 92 L.Ed. 1010 (1948). There

---

2. Letter of Isaac Shapiro, dated May 18th, 1972.

3. Although it is true that the Chairman of the Board of the Exchange, subject to the approval of the Board of Directors, appoints the Hearing Panel, who serve at the pleasure of the Board of Directors, such fact alone is not a sufficient factual showing of probable bias or prejudice, as to justify the extraordinary relief of a preliminary injunction.

the court held that, even assuming that the entire membership of the FTC, as a result of prior official investigations, had expressed strong opinions before congressional committees that the defendants were in violation of the Sherman Act, such action did not constitute sufficient bias to disqualify the commission.

 Furthermore, under plaintiffs' reasoning the Exchange is required to choose either between suing civilly in this court to recoup its losses or conducting disciplinary hearings. The congressional mandate of self-regulation by the Exchange embodied in the Exchange Act of 1934,[4] would be frustrated by imposing such a dilemma on the Exchange. To carry out that mandate the Exchange is required by the Act to provide rules and take action, where appropriate for disciplining its members. The plaintiffs argue that the Exchange cannot exercise these disciplinary powers if it simultaneously sues them in court. However, there is no statutory or other authority which thus limits the Exchange's rights, and it cannot be required to forfeit its right to sue as the price for carrying out its obligations to discipline its members for the protection of the public.[5]

## 3—APPEAL PROCEDURE

██ We make no determination as to the fairness of the appellate procedures of the Exchange because we believe that the question is premature at this time. While it is true that appeals are to be heard by the Board of Directors (or a delegated committee of the Board) who are presently suing the plaintiffs here, and that, therefore, the question of fairness is more acutely presented than in the case of the hearing procedure, we think that until the hearing stage is completed, it is too early to consider appellate questions.

██ Although the plaintiffs assert that, at the hearing they will face a "kangaroo court", we have indicated our doubts that this is so, and it is mere speculation to predict the outcome of the hearing. Indeed, two other Orvis partners have already been exonerated on the charges brought against them (Nelson Aff. para. 18). The plaintiffs here may also be exonerated. While the new rules would permit the Exchange to appeal from such a finding, it is certainly possible that the Exchange would not press an appeal. We do not believe that a federal court should require an institution with such important public responsibilities as the Exchange to alter its rules against the mere possibility that some unfairness might some day occur. We agree with the views expressed by Judge Motley in Jacobson v. American Stock Exchange, CCH Fed.Sec.L.Rep., § 93,131 (S.D.N.Y.1971), that:

". . . a judicial test of the no counsel provision is both premature and novel, thereby precluding an exercise of this court's discretion to grant a preliminary injunction as requested;"

and Judge MacMahon in Crimmins v. American Stock Exchange, 346 F.Supp. 1256 July 26th, 1972, that:

"Until the hearing before the board is concluded, it is sheer speculation for plaintiff to predict the outcome of it and to suggest reasons for that outcome. What plaintiff urges as immediate injury are his speculations that he might be found guilty because he was not represented by counsel and that, if so, he might suffer economic

4. § 19(b) of the Act, 15 U.S.C. § 78s(b); Silver v. New York Stock Exchange, 373 U.S. 341 at 352, 83 S.Ct. 1246, 10 L.Ed. 2d 389 (1963).

5. In a reply memorandum, Villani and Eucker suggest for the first time in this suit, that the court grant a permanent injunction and permit the Exchange to amend its complaint to seek "disbarment"

relief against the plaintiffs in this court, or in the S.E.C. so as to overcome the alleged dilemma. Putting aside the question whether a reply memorandum is the appropriate place to seek to amend the grounds for an injunction, neither this court nor the S.E.C. has power to conduct proceedings for the expulsion of Exchange members when Congress has specifically delegated that authority to the Exchange.

loss or criminal prosecution. We think that this is too tenuous a string of possibilities to serve as a basis for a preliminary injunction."

■ Finally as to both hearing and appeal, there is a serious question here as to whether the plaintiffs consented to the procedures of which they complain. In their respective applications to become members of the Exchange, the plaintiffs represented and pledged under oath that they would be bound by the constitution and rules of the Board of Directors of the Exchange, and as any amendments thereto. Since plaintiffs are sophisticated businessmen and since, in order to be approved by the Exchange, they were required to pass an examination based in part upon the Exchange's constitution and rules, there is no doubt here that their consent to the disciplinary procedures was given knowingly and intelligently. See Coenen v. R. W. Pressprich & Co., 329 F.Supp. 1296 (2d Cir. 1971). Were the recent procedures more suspect from a constitutional viewpoint, we might be inclined to give less weight to this argument. However, as stated above, at least insofar as the hearing stage is concerned, we find that they are constitutionally valid.[6]

## 4—"DISCOVERY" PROCEDURE

■ We think that Sloan (as well as Villani and Eucker) are entitled to inspect all documents within the Exchange's possession relating to their respective cases. Should these include documents of a confidential or privileged nature, the Exchange is, of course, free to apply for a modifying order. It

seems reasonable to view the Federal Rules of Civil Procedure as a model of procedural due process. In ordinary civil litigation, the plaintiff would be entitled to the material he seeks under Rule 37. Since his stake in the instant proceedings is as substantial as it would be in civil litigation, we believe that the pattern of the Rules should be followed.

■ Sloan correctly points out that the Exchange's position that it will only use against the plaintiffs those documents of which he has been sent copies, ignores the possibility that there may be documents which Sloan may find helpful to his case or which have been overlooked by the Exchange. Furthermore, to require a plaintiff to identify the documents he wishes to use when he does not even know what documents are in the possession of the Exchange, places him in an impossible cul-de-sac. It is significant that nowhere in the voluminous papers submitted by the Exchange does it advance a practical or legal rationale for its position.

## 5—DEMAND THAT THE EXCHANGE APPROVE PLAINTIFFS' APPOINTMENT TO MANAGERIAL POSTS

■ Villani's and Eucker's request that the Exchange presently approve their applications for approval to serve in certain managerial positions is denied. A motion for a preliminary injunction is addressed to the discretion of the court, which balances the possible injuries and conveniences of the parties as they would be affected by the denial or granting of the relief, Yakus v. United States, 321 U.S. 414, 440, 64 S.Ct. 660, 88 L.Ed. 834 (1944). Where a public

---

6. Sloan also contends that the disciplinary hearings are a group refusal to deal or boycott in violation of Section 1 of the Sherman Act. In Silver v. New York Stock Exchange, 373 U.S. 341 at 357, 83 S.Ct. 1246, at 1257, 10 L.Ed.2d 389 (1963), the Court stated that Exchange actions, which might otherwise be illegal, are exempt from the antitrust laws when "necessary to make the Securities Exchange Act work." For the Exchange to regulate the activities of its members it must have the power to expel, suspend, or discipline, as Section 6(b) of the Act specifically requires. Of course, as Silver instructs, such actions can only be taken when the procedures used are "fair". Silver v. New York Stock Exchange, supra, at 364, 83 S.Ct. 1246. However, concluding as we have that the procedures complained of are fair, plaintiffs' antitrust claim must be denied. See also Cowen v. New York Stock Exchange, 371 F.2d 661 (2d Cir. 1967).

interest is involved, as it is here because the Exchange is charged by the Exchange Act with the responsibility of protecting public investors,[7] a court should go "much further both to give and withhold relief in furtherance of the public interest than they are accustomed to go when only private interests are involved." Yakus v. United States, supra, at 440–441, 64 S.Ct. at 675. While there is no question that by our denial plaintiffs will continue to suffer harm, both financially and to their reputation, the public has an overriding right to protection until it is determined whether the plaintiffs have acted culpably. In making this determination, however, we do not intimate any view as to the merits of the charges.

 Moreover, the plaintiffs have not altogether been foreclosed from pursuing their profession, for the Exchange has permitted them to be engaged by member firms as registered representatives under a conditional approval. In view of the serious nature of the charges and the important public responsibilities imposed by law on the Exchange, it cannot reasonably be required to do more.

## 6—ATTORNEY'S FEES

 Eucker's and Villani's request that the Liquidator pay the attorney's fees incurred in their defense of the Exchange's civil action is denied. Such a request is directly contrary to the terms of the liquidation agreement,[8] signed by all the plaintiffs, pursuant to which Orvis was liquidated. It provides *inter alia* that a) before payment is made on any claim of the signatories, the Trustees of the Special Trust Fund

shall be repaid for amounts expended to assist the customers of Orvis; b) the Liquidator to whose care all assets of Orvis were transferred shall act in accordance with what he deems to be good business practice; and c) no signatory shall have any right of recourse against the Exchange or the Trustees. Under the terms of the agreement, plaintiffs are estopped from claiming attorney's fees from Orvis' assets until either the Liquidator exercises his discretion or the monies have been repaid. Since he is a sophisticated businessman, we cannot accept as legally sufficient Villani's explanation that "I do not remember the terms of that document, because I did not read it before signing it." Villani Aff. Par. 20.

 Without intimating any view as to the viability of their rights to use these assets, the motion is denied without prejudice to such rights as the plaintiffs may have, if any, in the event of a conclusion of the litigation favorable to them.[9]

To recapitulate, 1) plaintiffs' motions to enjoin the Exchange from conducting disciplinary hearings because they will not be allowed to be represented by counsel is denied as moot; 2) plaintiffs' motion to enjoin the Exchange from holding the proposed hearings on the grounds that the tribunal will not be impartial is denied; 3) plaintiff Sloan's request for an order allowing him to inspect all documents relating to his case is granted. The order shall likewise apply to plaintiffs Eucker and Villani, and is granted without prejudice to the Exchange to move in this court for a modifying order in the nature of a protective order; 4) plaintiffs Eucker's and Vil-

7. Securities Exchange Act of 1934, Section 19(d).

8. See Exhibit O to Nelson Aff.

9. On September 1st, 1972, Villani and Eucker moved pursuant to Rule 15(a), Fed.R.Civ.Pr. to amend the complaint by adding William J. Raguson, Liquidator of Orvis, as a party defendant so that, should plaintiffs prevail on this sector of the motion, the assets of Orvis could be

made available to them to pay attorney's fees. The Exchange opposed the motion on the ground that the relief requested was so without merit that leave to amend should not be granted. Since leave to amend should ordinarily freely be given under Rule 15(a), Fed.R.Civ.Pr., and since the Exchange has not demonstrated that it will be prejudiced in any way, the motion is granted.

**1194**

lani's requests for an order enjoining the Exchange from failing to approve their application to take managerial positions with other member firms and for an order enjoining the Exchange from failing to permit Orvis' assets to be used to pay attorney's fees are denied. Villani's and Eucker's motion to add William Raguson, Liquidator of Orvis, as a defendant is granted.

The foregoing constitutes the court's findings of fact and conclusions of law pursuant to Rule 65, Fed.R.Civ.P.

Submit order on notice.