**MALLINCKRODT CHEMICAL WORKS,**
**Plaintiff,**

v.

**GOLDMAN, SACHS & CO. et al.,**
**Defendants.**

**CATHEDRAL ESTATES, INC. and the**
**Bank of New York,**

v.

**Gustave L. LEVY et al., Defendants.**

**Nos. 71 Civ. 1437, 71 Civ. 2438.**

United States District Court,
S. D. New York.
Feb. 22, 1973.

Cadwalader, Wickersham & Taft, New York City (Peter M. Brown, New York City, of counsel), for plaintiffs.

White & Case, New York City (P. B. Konrad Knake, New York City, of counsel), for defendants.

EDELSTEIN, Chief Judge.

## OPINION

Plaintiffs have moved pursuant to Rule 37 of the Federal Rules of Civil Procedure for an order compelling defendant, Dun & Bradstreet, Inc. (Dun & Bradstreet or D&B) to produce for plaintiffs' inspection "all documents submitted to the Securities and Exchange Commission (SEC) in connection with the SEC's investigation of the financial collapse of the Penn Central Company." In addition, plaintiffs seek expenses, in-

cluding attorney's fees, incurred in obtaining this order.

This motion arose during discovery proceedings in the Penn Central Commercial Paper cases. These cases were consolidated for pretrial purposes before this court pursuant to 28 U.S.C. § 1407 (1970) by the Judicial Panel on Multidistrict Litigation (MDL–56A). The principal defendant is Goldman, Sachs & Co. (Goldman Sachs). It sold approximately eighty million dollars ($80,000,-000) of Penn Central Transportation Company (PCTC) commercial paper to the public on various dates between November 1969 and May 1970. Approximately sixty-three entities (institutions, individuals and trustees) held outstanding PCTC paper on June 21, 1970, the date on which the issuer filed a petition for reorganization under Section 77 of the Bankruptcy Act, 11 U.S.C. § 205 (1970). This outstanding commercial paper was not redeemed or otherwise paid at maturity. Subsequently, various purchasers brought suit against Goldman Sachs grounded on violations of the anti-fraud provisions of the Federal Securities Acts.[1] A few plaintiffs, including movants, also named Dun & Bradstreet as a defendant.

Dun & Bradstreet, a corporation organized under the laws of Delaware, provides a variety of financial services, including the rating of commercial paper offered for sale to the public. At all times relevant to this action defendant D&B rated commercial paper through its wholly-owned subsidiary, National Credit Office (NCO).[2] The promissory notes of PCTC were consistently assigned a "prime" rating by NCO. Plaintiffs contend, *inter alia*, that the commercial paper of Penn Central was not prime, "either by the standards of the industry or by the standards set by D&B itself." Plaintiffs claim they were damaged by their reliance on the NCO rating. Furthermore, plaintiffs allege numerous material misrepresentations by D&B on which they likewise relied to their detriment. Plaintiffs' causes of action against D&B are substantially similar to those described above with respect to Goldman Sachs.[3]

In connection with its investigation into the financial plight of Penn Central, the SEC subpoenaed certain documents from defendant D&B. In addition, several of defendants' employees were called to testify at hearings held by the Commission. The SEC investiga-

---

1. Sections 12(2) and 17(a) of the Securities Act of 1933; Section 10(b) of the Securities Exchange Act of 1934 and rules and regulations promulgated thereunder.

   Some of the plaintiffs also included causes of action against defendants under N.Y. Gen. Business Law § 352-c (McKinney 1968) and under the common law.

2. NCO generally entered into an agreement with issuers of commercial paper to evaluate the issuers commercial paper and assign one of five classifications to such paper:

   PRIME: Companies with a net worth or capital funds (net worth plus long-term subordinated loans) in excess of $50,000,000, which also meet NCO requirements and credit judgment in all other respects.

   In the cases of "captive" finance companies, net worth or capital funds in excess of $15,000,000 are required in addition to meeting NCO requirements and credit judgment in all other respects.

   DESIRABLE: Companies with net worth or capital funds (net worth plus long-term subordinated loans) of $25,-000,000 to $50,000,000, which also meet NCO requirements and credit judgment in all other respects.

   SATISFACTORY: Companies with net worth or capital funds (net worth plus long-term subordinated loans) ranging from approximately $10,000,000 to $25,-000,000, which also meet NCO requirements and credit judgment in all other respects.

   FAIR: Companies which do not meet a sufficient number of NCO's requirements for the three preceding classifications.

   NO RATING: Companies which do not meet any NCO requirements for inclusion in the Commercial Paper Market.

3. See Note 1, *supra*, and accompanying text.

tion culminated in a voluminous report entitled "Staff Study of the Financial Collapse of the Penn Central Company." One section of the report is devoted to the role played by NCO in rating Penn Central commercial paper.[4]

After defendant refused plaintiffs' request for production of the documents which it had submitted to the SEC, plaintiff moved to compel discovery. At the request of plaintiffs, without objection by defendant, this court agreed to take the instant motion on submission without oral argument.[5]

■ Briefly stated, the issue is whether plaintiffs' demand for production comports with the requirements set out in the applicable discovery provisions of the Federal Rules of Civil Procedure.

Plaintiffs assert that in the context of this litigation "all documents relating to defendant's operations and procedures in connection with the rating of commercial paper are clearly relevant and are 'reasonably calculated to lead to the discovery of admissible evidence.'" Plaintiffs contend that this argument satisfies the general requirement of relevance under Fed.R.Civ.P. 26(b)(1).[6]

In support of their position, plaintiffs cite Zients v. LaMorte, 319 F.Supp. 956 (S.D.N.Y.1970), mandamus denied, LaMorte v. Mansfield, 438 F.2d 448 (2d Cir. 1971) as authority mandating production of the documents in question. Plaintiffs reliance on *LaMorte* is misplaced. In that case shareholders brought suit against the officers and directors of a corporation charging them with violations of the federal securities laws. The president of the corporation testified at a non-public hearing conducted by the SEC. During discovery it was disclosed that defendant obtained a transcript of his testimony before the SEC. It was also established that the subject matter of the SEC investigation was directly related to the issues in the private lawsuit. 319 F.Supp. at 957. Plaintiffs sought to obtain the transcript "for the purpose of verifying or impeaching the deposition testimony given" by LaMorte. Defendant objected on the ground that SEC regulations prohibited the disclosure of non-public records of the Commission.[7] Defendant, however, was allowed to obtain a transcript of his testimony without any prohibition against its disclosure to third parties. Concluding that the privilege of confidentiality was the SEC's rather than the witness', the district court ordered defendant to produce the

---

4. This portion of the report is attached as Exhibit A to the affidavit of plaintiffs' counsel, which was made in support of plaintiffs' motion as required by Rule 9 (f) of the General Rules of the United States District Court for the Southern District of New York.

5. During the court's consideration of this motion it was apprised that the depositions at which plaintiffs intended to make use of these documents was scheduled for Wednesday, December 13, 1972. Hence, the court elected to decide the motion by endorsement and file its opinion later.

6. Rule 26(b)(1) provides as follows:
   Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party, including the existence, description, nature, custody, condition and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of any discoverable matter. It is not ground for objection that the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence.

7. For an excellent discussion of the background and rationale for the SEC confidentiality rules and regulations see Judge Friendly's opinion denying defendant mandamus relief. LaMorte v. Mansfield, 438 F.2d 448, 450–451 (2d Cir. 1971).

transcript.[8] In denying defendant's petition for a writ of mandamus, the Court of Appeals came to the same conclusion.[9]

In the case at bar there is no issue of SEC confidentiality. The documents in question belong to defendant and were in its possession during the pendency of this motion. If plaintiffs' demand for production satisfies the requirements of the Federal Rules the documents must be produced. That the documents were submitted to the SEC is wholly irrelevant to this motion except as discussed below.

■ Defendant contends that plaintiffs' demand for these documents grounded on defendant's production to the SEC is insupportable. Defendant is correct in this assertion. The production of documents to an agency or other investigative body does not automatically make those documents discoverable in a separate proceeding. Defendant's citation to United States v. Interstate Dress Carriers, Inc., 280 F.2d 52 (2d Cir. 1960) lends support to this conclusion.[10] Although that case concerned documents submitted to a grand jury, which were sought by the Interstate Commerce Commission (ICC) in a separate investigation, it is analogous to the situation presented by the instant motion. The ICC sought financial records of defendant held by the Department of Justice pursuant to a federal grand jury subpoena *duces tecum*. Defendant maintained that Rule 6(e) of the Federal Rules of Criminal Procedure prohibited the disclosure of documents being used by a grand jury. In rejecting defendant's contention, the court stated that if the materials requested are sought for their intrinsic value rather than to find out what took place before the grand jury, Rule 6(e) does not proscribe their disclosure. 280 F.2d at 54. The court was careful to point out, however, that an independent basis for production must be established before the documents could be disclosed.[11] In *Interstate* the statutory authority[12] of the ICC to inspect financial records of parties subject to its regulation satisfied this requirement. In the motion before the court independent legal authority for production of the documents must flow from Rules 26 and 34 of the Federal Rules of Civil Procedure. Defendant maintains that plaintiffs' demand for discovery fails to comply with either rule.

■ Before analyzing plaintiffs' demand for production, it should be recalled that "the scope of discovery under the Federal Rules of Civil Procedure is

---

8. Dun & Bradstreet obtained and produced to plaintiffs transcripts of testimony given by its employees before the SEC.

9. The language of the Court of Appeals is as follows:
   To the extent that a privilege exists, it is the agency's, not the witness'. The agency is free to withdraw the veil of secrecy, and once the witness has been allowed to obtain the transcript of his testimony, it is no more privileged or confidential in his hands—absent any restriction placed by the agency on disclosure of its contents—than any other record of a previous statement would be. 438 F.2d at 451.

10. *See also* In re Hearings Before Committee on Banking and Currency of United States Senate, 19 F.R.D. 410 (N.D.Ill. 1956).

11. Defendant's citations to In re Grand Jury Investigation (General Motors Corp.) 210 F.Supp. 904 (S.D.N.Y.1962) and Arlington Glass Co. v. Pittsburgh Plate Glass Co., 24 F.R.D. 50 (N.D.Ill. 1959) are inappropriate and serve to confuse the standard by which plaintiffs' motion must be tested. These cases require a "compelling necessity" test to be met before a court, in a separate proceeding, could order production of documents submitted to a grand jury. This test is far more stringent than the general requirements for discovery in civil actions. Moreover, defendant has not claimed that the documents in question are privileged because they were submitted to the SEC.

12. The Motor Carrier Act of 1935, 49 U.S.C. § 320(d) (1970).

to be liberally construed so as to provide both parties with information essential to proper litigation on all the facts." Patton v. Southern Bell Telephone & Telegraph Co., 38 F.R.D. 428 (N.D.Ga. 1965), *citing* Hickman v. Taylor, 329 U. S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947) and 4 J. Moore, Federal Practice ¶ 26 [now ¶26.55] (2d ed. 1970).

■ Rule 26(b)(1) provides in pertinent part that "Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action. . . ." The parameters of relevance in the context of any litigation is necessarily imprecise. Most authorities admit that it is impossible to formulate a general rule defining the term "relevance."[13] Rule 26(b)(1) makes it clear that admissibility at trial is not a limitation on discovery provided that "the information sought appears reasonably calculated to lead to the discovery of admissible evidence." The sweeping scope of this language led one distinguished commentator to suggest that "discovery should be relevant where there is *any possibility* that the information sought may be relevant to the subject matter of the action." C. Wright, Law of Federal Courts § 81, at 359 n. 47 (2d ed. 1970) (emphasis added). Applying this standard, which correctly reflects the scope of discovery envisaged by the drafters, plaintiffs' demand for the documents in question plainly satisfies the requirement of relevance under Rule 26(b)(1) as incorporated by reference in Rule 34(a).

Included in plaintiffs' papers submitted to the court is the section of the SEC "Staff Study" dealing with the role of NCO—defendant's subsidiary—in rating the commercial paper of PCTC. After reviewing this document it is apparent that the SEC investigation focused on the practices used by defendant in rating PCTC paper. The substantive issues raised by plaintiffs in this action are intimately related to these practices. Even if some items are irrelevant, plaintiffs' demand for this group of documents certainly complies with the requirement of relevance set out in the Rules. Rule 34, however, requires more than relevance before a court can compel production of documents.

■ In relevant part, Rule 34(b) provides that a request for production of documents "shall set forth the items to be inspected either by individual item or by category, and describe each item and category with *reasonable particularity*." (emphasis added).[14] The "reasonable particularity" requirement is not susceptible to exact definition. What is reasonably particular is dependent upon the facts and circumstances in each case.

Defendant contends that plaintiffs have ignored the specificity command of Rule 34(b). To support this assertion defendant cites a number of cases in which requests for production of documents were denied. These cases are all distinguishable from the instant case.

First, these cases were all decided before the effective date of the 1970 amendments to the Federal Rules. Therefore, some of these cases[15] required a showing of "good cause" for compulsory discovery under Rule 34. The "good cause" requirement was the subject of much confusion and sharp disagreement among both courts and

13. 4 J. Moore, Federal Practice ¶ 26.56[1], at 26–131 (2d ed. 1970) ; C. Wright, Law of Federal Courts § 81, at 359 (2d ed. 1970) ; 8 C. Wright & A. Miller, Federal Practice & Procedure, Civil § 2008, at 45 (1970).

14. *See generally* 8 C. Wright & A. Miller, *supra*, note 13 § 2211.

15. *See, e. g.,* Walker v. Liberty Mut. Ins. Co., 48 F.R.D. 365 (E.D.Wisc.1970) ; International Commodities Corp. v. International Ore & Fertilizer Corp., 30 F.R.D. 58 (S.D.N.Y.1961) ; Austin Theatre, Inc. v. Warner Bros. Pictures, Inc., 30 F.R.D. 156 (S.D.N.Y.1958) ; Service Liquor Distributors, Inc. v. Calvert Distillers Corp., 16 F.R.D. 344 (S.D.N.Y.1954).

commentators.[16] The drafters of the 1970 Amendments specifically revised Rule 34 to eliminate the "good cause" language.[17]

Other authority cited by defendant can be distinguished on the ground that the demands for discovery were so broad that the party from whom discovery was sought would have been put under an intolerable burden if production had been ordered.[18] The situation here is quite different. The designation is limited both spacially and temporally to the SEC inquiry, and defendant has not raised any objection to plaintiffs' demand on the ground of burdensomeness.

■ Defendant states that its production to the SEC does not necessarily bring plaintiffs' demand within the ambit of Rule 34(b), which requires that a designation of documents be reasonably specific. See, e. g., Roebling v. Anderson, 103 U.S.App.D.C. 237, 257 F.2d 615, 620 (1958); Speedrack Inc. v. Baybarz, 45 F.R.D. 254, 257 (E.D.Cal.1968); Richland Wholesale Liquors, Inc. v. Joseph E. Seagram & Sons, Inc., 40 F.R.D. 480, 481 (D.S.C.1966). The leading commentators view the designation requirement as going to identification. Professor Moore believes the appropriate question "is whether a reasonable man would know what documents or things are called for." 4A J. Moore, Federal Practice, ¶34.07, at 34–57 & n. 18.[19] Under this standard it is clear that defendant can identify the documents demanded by plaintiffs. Defendant has already produced these documents to the SEC.

Plaintiffs' request for "reasonable expenses incurred in obtaining the order, including attorney's fees" is denied.

---

16. For an excellent discussion and analysis of this subject see 8 C. Wright & A. Miller, supra, note 13, § 2205.

17. See Advisory Committee's Note on Rule 34, in Proposed Amendments to the Federal Rules of Civil Procedure Relating to Discovery, 48 F.R.D. 487, 526 (1970).

18. See, e. g., Automatic Laundry Service v. Telecoin Corp., 16 F.R.D. 26 (S.D.N.Y. 1954) (Plaintiffs "have asked for everything conceivable and added a catch-all to include the inconceivable."); Colorado Milling & Elevator Co. v. American Cyanamid Co., 12 F.R.D. 339 (W.D.Mo. 1952) (Court characterized request for production of documents as "unreasonable and oppressive."); Mercantile Metal & Ore Corp. v. American Gen. Supply Corp., 12 F.R.D. 345 (S.D.N.Y.1952) ("The blanket request . . . for all documents 'which may be material to the issues' is an improper designation.") (emphasis added).

Professors Wright and Miller have discussed this subject as follows:

> There are a great many cases in which courts have relied on the requirement of designation as a ground for refusing to require a general search or inspection of voluminous records. A reading of these cases suggests that other considerations may have gone into the decisions. The court may have thought that the party asked to produce knew well what was wanted but that the discovery sought would have been too burdensome, or that the former requirement of "good cause" was not met with regard to the entire range of documents sought or that documents containing needed information also contained matter best preserved in confidence. Thus what appear to be strict decisions about designation probably are grounded in other reasons for refusing to require production.
> 8 C. Wright & A. Miller, supra, note 13, § 2211, at 631–633. (footnotes omitted)

19. 8 C. Wright & A. Miller, supra, note 13, § 2211, at 629. See generally Newport, "Designation" as Used in Rule 34 of the Federal Rules of Civil Procedure and Discovery and Production of Documents, 35 Iowa L.Rev. 422 (1950).