**XEROX CORPORATION,**
**Plaintiff,**

v.

**INTERNATIONAL BUSINESS MA-**
**CHINES CORPORATION,**
**Defendant.**

**Nos. 70 Civ. 1596, 73 Civ. 3421.**

United States District Court,
S. D. New York.

Aug. 25, 1975.

Brumbaugh, Graves, Donohue & Raymond, Kenyon & Kenyon, Reilly Carr & Chapin, New Yok City, for plaintiff.

Fish & Neave, New York City, for defendant.

## MEMORANDUM

EDELSTEIN, Chief Judge.

Defendant International Business Machines Corporation (IBM) has applied to this court for an order which in effect embodies the provisions of two proposed orders submitted by the Special Master (Master) appointed in this matter. These proposed orders would require plaintiff Xerox Corporation (Xerox) to search for and to produce certain documents and information.

On March 25, 1974 the Master submitted a report and recommendation and proposed order (Affidavit of David W. Plant, Exhibit 1, filed July 23, 1975, [hereinafter Plant Affidavit]) dealing with two questions presented to him at a December, 1973 hearing and in three IBM memoranda dated December 19, 1973, December 31, 1973 and January 25, 1974. [hereinafter referred to as IM *'date'*]. The first issue was whether Xerox had fully complied with IBM's demands for the production of documents concerning its defense of patent unenforceability. Subsumed in that question were questions concerning Xerox' production of documents pertaining to patent acquisition, patent licensing and documents relating to Xerox' patent portfolio and Xerox' patent acquisition, licensing and enforcement practices and policies. The second issue discussed by the Master was whether Xerox had complied completely with IBM's demands relating to prior art and trade secrets. Subsumed in this issue were questions concerning Xerox' production of

documents relating to government contracts and contract reports, and documents and information known to Xerox concerning the 'public domain' status of Xerox' trade secrets.

As to IBM's demand for production of patent misuse documents, the three IBM memoranda addressed numerous instances in which Xerox' production would seem inadequate or incomplete. Xerox retorted, *inter alia*, that certain patent acquisition requests had no bearing whatsoever upon the patent misuse defense alleged by IBM, that certain documents were easily obtained from the Patent Office, that the search for certain documents was still continuing, and that many of the documents had previously been produced. The complexity of IBM's demands and Xerox' responses prompted the Master to schedule another hearing on the relevance of each outstanding request as to patent misuse documents and to have the parties address themselves to the existence or non-existence of documents related to those same requests. This recommendation was embodied in paragraph (a) of the March 25th proposed order and was the basis of his later May 16, 1975 report.

IBM had also demanded documents relating to patents and to patent acquisition, licensing and enforcement practices and policies; for these documents Xerox had limited its search to files within its Patent Department, alleging that only uninformed compilations would exist outside Xerox' Patent Department files. The Master did not find Xerox' limitation well founded, citing *Villani v. New York Stock Exchange, Inc.*, 348 F.Supp. 1185, 1192 (S.D.N.Y. 1972), and recommended that Xerox search for and produce the contested documents. Paragraph (b) embodied this recommendation.

Paragraph (c) of the proposed order would require Xerox to produce documents relating to Xerox' knowledge of or possession of Government documents relevant to the public availability of Xerox' trade secrets; specifically, this request called for documents relating to Government contract reports relating to xerography. IM 12/19/73, Tab E, requests 1 & 2. Paragraph (d) directed Xerox to provide IBM with any information as well as any documents relating to the basis for Xerox' representations that bracketed trade secret information in Xerox' 'restricted' documents is in the public domain. IM 12/19/73 at 24. Paragraph (e) would require Xerox to produce documents relating to Xerox contracts with the Government, Rank Xerox and others.

Neither party entered any objection to the March 25th report and recommendation or to the proposed order. In its opposition papers submitted in the instant motion, Xerox indicates that it does not object to the entry of an order containing paragraphs (c), (d), (e) and (f) of the March 25th proposed order. However, Xerox does now oppose approval of paragraph (b) of that order. Xerox now indicates that although it is willing to undertake the further investigation and production called for by paragraph (b), it "believes that it would be more productive to defer such investigation until the parties have conferred with the Special Master on August 20, 1975, concerning relevant attorney-client and relevant attorney's work product documents" pursuant to this court's opinion of July 23, 1974 at 13–16. Xerox Memorandum filed July 25, 1975 at 8 [hereinafter Xerox Memorandum]. Xerox' recommendation is bottomed upon the allegation that some of the documents IBM seeks are documents to which attorney-client privilege and/or work product attach and that the ultimate resolution by this court as to the discoverability of such documents should "put the matter to rest once and for all." Xerox Memorandum at 9.

■ The fact that this court has devised a procedure for the production of and handling of privileged and/or work product documents cannot be employed as a barrier to discovery in the first instance. Therefore, Xerox' re-

quest for deferred treatment is denied. Xerox is ordered to comply fully with paragraph (b) of the March 25th proposed order within 30 days of the entry of this opinion. As to any documents produced under this paragraph which Xerox determines to be subject to claims of attorney-client privilege or to claims of attorney's work product, Xerox should be guided by this court's opinion of July 23, 1974 and any subsequent procedures established by the Master pursuant to that opinion or by any further order of this court.

■ The court has reviewed the recommendations embodied in paragraphs (c), (d), (e), and (f) of the March 25th proposed order and adopts the Master's recommendations. Xerox is ordered to comply with these paragraphs within 30 days from the date of the entry of this opinion.

Following the hearing before the Master held pursuant to paragraph (a) of the March 25th proposed order, the Master submitted another report and recommendation accompanied by a proposed order dated May 15, 1974. Plant Affidavit, Exhibit 2. This report dealt with IBM's outstanding request for documents it seeks in furtherance of its patent misuse defense. Specifically, the documents relate to the acquisition of xerography patents by Xerox and relate to licensing of xerography patents by or to Xerox. The Master had determined the issues to be twofold: (1) do each of the IBM demands fall within the bounds of permissible discovery contained within Fed.R.Civ.P. 26(b)(1), and (2) has there been an adequate attempt at production by Xerox of those items Xerox has conceded to be relevant but has not yet produced.

In IBM's Answer and Counterclaim dated July 21, 1970 [hereinafter Answer], IBM alleged that Xerox had engaged in inequitable and unlawful conduct, was seeking relief with unclean hands, and therefore should be denied relief. Answer ¶ 73. IBM had pleaded that "Xerox has accumulated by purchase and otherwise, a large number of additional and overlapping patents, including the patents in suit" in order to "perpetuate its monopoly after expiration of its basic patents." Answer ¶ 56. Further, IBM had pleaded that "Xerox is misusing the patents in suit and its other patents by using them, not to enjoy a monopoly of the specific subject matter to which they relate, but rather to extend beyond its legal term the broad monopoly of plain paper xerographic copiers which Xerox has enjoyed and exhausted under its expired patents." Answer ¶ 57. IBM's demand for the contested documents is based, *inter alia,* upon these allegations of patent misuse.

At the April hearing, Xerox had argued that documents relating to Xerox funded research and patents produced to Xerox from that research were not relevant to a defense of patent misuse because such patent acquisitions are under the law the same as patents acquired from one's own employees and thus not subject to a charge of misuse by attempted or actual monopolization. Transcript of hearing before the Special Master, April 18, 1974 at 10–12, [hereinafter cited as Tr.]

Before addressing the relevance of IBM's demand to its misuse defense, the Master observed that under Fed.R. Civ.P. 26(b)(1) as read by this court, discovery is relevant where there is any possibility that the information sought may be relevant to the subject matter of the action. *Mallinckrodt Chemical Works v. Goldman, Sachs & Co.,* 58 F.R.D. 348 (S.D.N.Y. 1973). Therefore, the Master reasoned that to find that IBM's demands were outside the bounds of proper discovery he would first be required to find that there was not "any possibility" that the information sought was relevant to the subject matter of the action. This he could not find.

The Master acknowledged that he was aware of no case in which the acquisition of patents by means of sponsored research had led to a finding of patent misuse; and he recognized that courts had determined that the "mere" accumu-

lation to the effect of "mere" accumula-illegal. However, noted the Master, the cases perused had limited their statements as to the effect of patent accumulation to the effect of "mere" accumulation or to accumulation in and of itself but that these opinions had suggested that accumulation coupled with other acts might constitute misuse. Thus, in *Cole v. Hughes Tool Co.*, 215 F.2d 924, 934 (10th Cir. 1954) the court noted:

> "The mere accumulation of patents, no matter how many, is not in and of itself illegal." Of course, there must not be a misuse of the patent monopoly.

And in *McCullough Tool Co. v. Well Surveys, Inc.*, 395 F.2d 230, 239 (10th Cir.), *cert. denied,* 393 U.S. 925, 89 S.Ct. 257, 21 L.Ed.2d 261 (1968), it is again stated:

> A patent pool is not illegal by itself. *Cole v. Hughes Tool Co.*, 10 Cir., 215 F.2d 924, 935. It must be either illegally acquired or illegally used.

Since IBM has alleged other acts of misuse, the Master felt constrained to view IBM's request in that framework. Having recognized that IBM bases its misuse defense, *inter alia,* on a pattern of misuse, including monopolistic acquisition, by purchase and otherwise, of xerographic patents, monopolistic licensing practices of such patents and improper use of patent litigation, *e. g.,* litigation for purposes other than to protect existing patents, the Master could not state at this juncture that IBM had stepped beyond the bounds of permissible discovery in demanding information concerning Xerox' patent acquisition, whether by sponsored research or otherwise.

The Master therefore recommended that Xerox complete its search for and production of all documents demanded by IBM with regard to its patent misuse defense, as noted in IM 12/19/73, 12/31/73 and 1/25/74 and as cited at the April 18, 1974 hearing before the Master, within 45 days of the effective date of the proposed order. With regard to documents relating to Xerox' relation-ship with the Battelle Memorial Institute, the Master's report acknowledged IBM's statement that concerning Battelle IBM is concerned with ascertaining the sources of funding rather than the details of acquisitions of patents based on sponsored research and acknowledged Xerox' statement that it would seek to supply such information as a compromise (Tr. at 28–31); he limited his recommendation in the case of acquisitions from Battelle to the disclosure by Xerox of the sources of funding of research leading to each patent acquired by Xerox from Battelle. Plant Affidavit, Exhibit 2 at 7 & paragraphs (a) & (b). Paragraph (c) of the proposed order would require that at the end of the 45 day period for production Xerox must represent that it has searched all places which could reasonably be expected to yield the documents referred to in paragraph (a). Then, upon the failure of such representation or upon a showing by IBM that a reasonable basis for questioning such representation exists, the Master recommended that IBM may make further application to the Master to require Xerox to produce a list of those persons responsible for Xerox' production so that IBM may depose such persons as to the scope and reasonableness of Xerox' search. Paragraph (d).

IBM supported the Master's recommendations as it again does in the instant motion. Plant Affidavit, Exhibit 6. Xerox filed a memorandum opposing the entering of the May 25th proposed order (Plant Affidavit, Exhibit 5); Xerox' opposition presented there is similar to that embodied in its memorandum opposing the instant motion. Xerox' papers reveal that its opposition is limited to documents related to patents acquired from sponsored research. Xerox recites its arguments earlier presented to and dealt with by the Master that proper acquisition is not misuse and that acquisition of patents by sponsored research is irrelevant to this case. Xerox' argument, which cites no legal precedent, does not persuade this court; it is premature to determine that dis-

## 456

covery as to sponsored research is irrelevant to this case or to IBM's pleadings.

 Although Xerox had in its earlier memorandum opposing entry of the Master's proposed order stated that compliance with IBM's demands would require voluminous unnecessary and unproductive searches, it does not reiterate that argument in its opposition memorandum to the instant motion. The proposed order directs Xerox to search only those files which could reasonably be expected to yield the documents referred to in paragraph (a). Aside from conclusory statements, Xerox fails to demonstrate with any specificity why such a requirement presents a burden outweighing any need for discovery.

 Having studied the Master's May 15th recommendation, the underlying papers and the transcript of the April hearing, and the papers submitted on this motion, the court accepts the Master's recommendations embodied in the May 15th report and orders Xerox to comply with the terms and conditions of the order accompanying that report.

 So ordered.