**Mrs. Samuel E. ALLGOOD, Individually and as Independent Executrix of the Estate of Samuel E. Allgood, Marcus Allgood, and Malcolm Allgood, Plaintiffs–Appellants,**

v.

**R.J. REYNOLDS TOBACCO COMPANY, the American Tobacco Company, the Tobacco Institute, Inc., and the Council for Tobacco Research–U.S.A., Inc., Defendants–Appellees.**

No. 95–20363.

United States Court of Appeals, Fifth Circuit.

April 16, 1996.

Alden D. Holford, Houston, TX, for plaintiff and plaintiffs-appellants.

Richard H. Caldwell, Mayor, Day, Caldwell & Keeton, Houston, TX, for R.J. Reynolds Tobacco Co.

Sam W. Cruse, Jr., Cruse, Scott, Henderson & Allen, Houston, TX, for American Tobacco Co.

Lea F. Courington, Scott William MacLaren, Gwinn & Roby, Dallas, TX, for Tobacco Institute, Inc.

William Key Wilde, Mark E. Lowes, Bracewell & Patterson, Houston, TX, Steven Klugman, Debevoise & Plimpton, New York City, for Council for Tobacco Research–U.S.A., Inc.

Before POLITZ, Chief Judge, and GOODWIN [1] and DUHÉ, Circuit Judges.

GOODWIN, Circuit Judge:

Samuel Allgood, a lifetime smoker, died from complications relating to throat cancer in January of 1989. His family appeals a summary judgement on all claims in their action against defendants R.J. Reynolds Tobacco Company (Reynolds); The American Tobacco Company (AT); The Tobacco Insti-

---

1. Circuit Judge for the Ninth Circuit, sitting by designation.

tute, Inc. (TI); and The Council for Tobacco Research–U.S.A., Inc. (CTR). We affirm.

Plaintiffs claimed that defendants tortiously contributed to Allgood's death through fraudulent misrepresentations regarding defendants' efforts to discover the health consequences of cigarette smoking, fraudulent concealment of the health risks of smoking, negligence in the production and marketing of cigarettes, breach of implied and express warranties, and the defective design and marketing of cigarettes.

## A. *Statute of Limitations*

### 1. *Negligence, Conspiracy and Product Liability Claims*

■ Plaintiffs may bring those personal injury claims which Allgood himself could have brought immediately prior to his death. *Russell v. Ingersoll–Rand Co.*, 841 S.W.2d 343, 345 (Tex.1992). Accordingly, for purposes of the statute of limitations the relevant dates are the date the claims accrued and the date of Allgood's death. Generally, a claim accrues at the time of the tortious behavior. However, under the "discovery rule," a claim does not accrue until the plaintiff knows, or should know, of the resulting injury. *Nelson v. Krusen*, 678 S.W.2d 918 (Tex.1984).

■ The record establishes that Allgood knew, or should have known, of·a relevant injury in February 1986. According to the affidavit of Dr. Bruce Kenamore, on that date he told Allgood that he had emphysema and must stop smoking. The doctor's advice provides a sufficient basis for the statute of limitations to begin running, and places its expiration date prior to Allgood's death in 1989. Tex.Civ.Prac. & Rem.Code § 16.003(a) (providing for·a two year statute of limitations for personal injury claims).

Plaintiffs' attempts to undercut Dr. Kenamore's affidavit are unavailing. Mere allegations that Dr. Kenamore may have been mistaken, without supporting evidence, are insufficient to defeat a motion for summary judgement.

Plaintiffs' argument that the doctrine of continuing tort tolled the statute of limitations until the time when the tortious injury ceased—that is when Allgood stopped smoking in February of 1987—is also misguided. While Texas has applied the theory of continuing tort in a drug addiction case, Texas has limited its application to cases where the causal relation between action and injury remained unknown to the plaintiff. *Upjohn Co. v. Freeman*, 885 S.W.2d 538, 542 (Tex.Ct. App.1994, error denied). In *Freeman*, the court allowed a plaintiff to maintain an action for the entire course of his treatment rather than just those portions of treatment within the statute of limitations period where he alleged the tortious prescription of the drug Halcion. However, the court stated "[i]f Freeman had discovered his injury and its cause, the rationale for the continuing-tort rule would no longer apply, and the statute would commence to run at that point." *Id.* at 544.

The question we face here is similar. The causal relationship between smoking and Allgood's injuries was known to Allgood at least as early as February 1986. Therefore, the theory of continuing tort is immaterial in this case because the statute of limitations began to run in February of 1986, and had expired prior to Allgood's death.

### 2. *Breach of Warranty Claims*

Plaintiffs claim that defendants breached both implied and express warranties when they sold cigarettes which could cause fatal diseases. The implied warranties related to the cigarettes' merchantability and fitness for a particular use. The express warranties allegedly arose from various advertisements, including "A Frank Statement to Smokers," and warranted against adverse health effects. The ads contained such statements as "[Pall Mall's] are *mild!;*" "guard against throat scratch [Pall Mall];" "get satisfying flavor so *friendly* to your taste [Pall Mall];" "protect your 'T' [throat and taste] zone [Camels];" "No Throat Irritation Due to Smoking Camels [in thirty day smoking test];" and "More Doctors Smoke Camels Than Any Other Cigarette."

#### (a) Defendants TI and CTR

■ Under Texas law only actual sellers are liable for breach of warranty, not trade

associations or public relations agents who play a role in distribution. *Arceneaux v. Lykes Bros. Steamship Co., Inc.*, 890 S.W.2d 191 (Tex.Ct.App.1994). Even where a party has promoted a product, and made promises regarding that product, if the party is not the actual seller a claim for breach of warranty will not lie. *Charles E. Beard, Inc. v. Cameronics Technology Corp., Ltd.*, 729 F.Supp. 528 (E.D.Tex.1989), *aff'd.*, 939 F.2d 280 (5th Cir.1991). Plaintiffs have provided no evidence of manufacture or sale on the part of either TI or CTR. In contrast, TI and CTR have submitted affidavits stating that they have never manufactured or sold cigarettes. Summary judgement on behalf of the TI and CTR was free from error.

#### (b) Defendants Reynolds and AT

The district court properly granted summary judgement in favor of Reynolds and AT on the warranty claims. Under Texas law, warranty claims accrue on the date of sale and the statute of limitations extends for four years. Tex.Bus. & Com. § 2.725. Allgood last purchased Reynolds' cigarettes sometime before 1957, long before his death. Thus, the statute of limitations bars plaintiffs' claims against Reynolds'. Similarly, with the exception of those claims arising from Allgood's purchase of American Tobacco cigarettes during the four year statutory period, the statute of limitations bars the breach of warranty claims against American Tobacco.

■ Plaintiffs argue that their claims survive, nonetheless, because of a tolling of the statute of limitations during the interim period. Texas allows the tolling of the statute of limitations for warranty claims only when there is an express warranty which explicitly extends to future performance. *Safeway Stores, Inc. v. Certainteed Corp.*, 710 S.W.2d 544 (Tex.1986). None of the statements or ads relied upon by plaintiffs explicitly extend to future performance. Indeed, at most the ads could be construed to guarantee only transitory pleasure from the smoking of cigarettes. *See Gunsalus v. Celotex Corp.*, 674 F.Supp. 1149, 1155 (E.D.Pa. 1987) (holding that the American advertisements promised "smoker satisfaction that could be evaluated by the user immediately",

but did not "constitute express warranties of future performance as a matter of law"). Further, the only case plaintiffs cite to support their warranty theory involved ads with more explicit claims of health guarantees. *Cipollone v. Liggett Group, Inc.*, 893 F.2d 541, 575–576 (3rd Cir.), *aff'd in part, rev'd in part on other grounds* 505 U.S. 504, 112 S.Ct. 2608, 120 L.Ed.2d 407 (1992). Therefore, warranty claims accrued at the time of sale and are barred by the statute of limitations.

#### B. *Claims for Fraudulent Misrepresentation and Concealment*

Plaintiffs claim that defendants' "A Frank Statement to Smokers" and the industry's general "it's not proven" campaign misrepresented the health risks of smoking to consumers. Plaintiffs allege that the "Frank Statement" fraudulently concealed the true purpose of the tobacco companies, lulling Allgood into a false sense of security regarding his health and smoking. Plaintiffs also allege that defendants discovered the health risks of tobacco through their research, and fraudulently concealed that information from the public, including Allgood.

■ To the extent that plaintiffs' claims are based on fraudulent concealment or a failure to warn after 1969, they are preempted by the Federal Cigarette Labeling and Advertising Act, 15 U.S.C. § 1331–1340. *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 112 S.Ct. 2608, 120 L.Ed.2d 407 (1992) (plurality opinion).

■ As for the claims not preempted by *Cipollone*, the district court properly granted summary judgement. The evidence that Allgood relied upon the alleged misrepresentations, an essential element of both affirmative fraud and fraudulent concealment, is insufficient as a matter of law. The most plaintiffs' affidavits and depositions have been able to show is that Allgood read news periodicals during the time period the alleged misrepresentations were made. This proof does not prove that he read the misrepresentations, however, and falls far short of proving he actually relied upon them. Indeed plaintiffs' own expert testified that Allgood would have continued smoking absent an immediate and

personal life threatening situation. In addition, his wife's deposition admitted that he was so addicted that no amount of warning could induce him to quit. Given this failure of proof on the essential element of reliance, summary judgement was appropriate.

### C. *"Common Knowledge" Theory*

Plaintiffs argue that the district court erred in ruling that all claims based on a failure to warn were barred for the alternative reason that the risks of cigarette smoking were within the "common knowledge." *Joseph E. Seagram & Sons v. McGuire*, 814 S.W.2d 385, 387 (Tex.1991). In *McGuire*, the Texas Supreme Court held that alcohol producers had no duty to disclose the dangers of alcohol because such dangers were within the common knowledge of the public.

> The existence of a duty to warn or instruct in this cause is thus determined by the extent to which the danger of developing the disease of alcoholism from prolonged and excessive consumption of alcoholic beverages is "common knowledge." [Footnote omitted.] Encompassed within the term "common knowledge" are those facts that are so well known to the community as to be beyond dispute.

*Id.* at 388.

█ Like the dangers of alcohol consumption, the dangers of cigarette smoking have long been known to the community. *See e.g. Roysdon v. R.J. Reynolds Tobacco Co.*, 849 F.2d 230, 236 (6th Cir.1988); *Paugh v. R.J. Reynolds Tobacco Co.*, 834 F.Supp. 228, 230–231 (N.D.Ohio 1993). Therefore, defendants had no duty to warn Allgood of the dangers of smoking, and summary judgement was appropriate for claims alleging such a duty. This holding covers the warranty claims for AT cigarettes which survived the statute of limitations challenge. Accordingly, all claims were properly dismissed.

### D. *Discovery Issues*

Plaintiffs also appeal the district court's orders denying plaintiffs' motion to compel documents and granting defendants' motion for a protective order and the return of produced documents. We first note that plaintiffs failed to properly raise these issues in this court. Instead of briefing the issues, which would have extended their brief beyond the page limit, plaintiffs attempted to incorporate their motion papers from the district court by reference in this court. We noted our disapproval of such tactics in *Bobsee Corp. v. United States*, 411 F.2d 231, 234 n. 2 (5th Cir.1969). The court does not look upon such conduct with any more favor today than it did then. Nonetheless, we will address the merits of plaintiffs' claims, reviewing for abuse of discretion.

#### 1. *Motion to Compel "Special Project" Documents*

█ Plaintiffs sought the production of documents protected by the attorney/client privilege by attempting to invoke the crime/fraud exception. *United States v. Zolin*, 491 U.S. 554, 109 S.Ct. 2619, 105 L.Ed.2d 469 (1989). Plaintiffs claim that the special project documents are sufficient to make out a prima facie case because a district court had formerly determined they made out a prima facie case under the crime/fraud exception. *Haines v. Liggett Group, Inc.*, 140 F.R.D. 681 (1992), *order vacated on other grounds* 975 F.2d 81 (3rd Cir.1992). However, one court's finding of a prima facie case does not automatically make another court's rejection of the same finding an abuse of discretion. Given the absence of any other evidence of misdeed, we can not say the district court abused its discretion.

#### 2. *Motion for Protective Order and Return of Documents*

Plaintiffs argue that the district court erred in requiring them to return two documents inadvertently produced by defendants. This circuit allows courts to determine on a case-by-case basis whether an inadvertent disclosure results in the waiver of privilege. Here, the district court believed the circumstances did not warrant waiver of the privilege. Plaintiffs have not presented to this court evidence to the contrary. We find no abuse of discretion.

AFFIRMED.