Janet SACKMAN, et al., Plaintiffs,

v.

The LIGGETT GROUP, INC., Defendant.

No. CV 93–4166 (ADS).

United States District Court,
E.D. New York.

June 27, 1997.

Ken McClain, Humphrey, Farrington & McClain, Independence, MO, for Plaintiffs.

Michael Fay, Kasowitz, Benson, Torres & Friedman, New York City, for Defendant.

Peter C. Hein, Wachtell, Lipton, Rosen & Katz, New York City, for Philip Morris Co.

Billy Randles, Shook, Hardy & Bacon LLP, Kansas City, MO, for Lorillard Tobacco Co.

Steven Klugman, Harry Zirlin, Debevoise & Plimpton, New York City, for Council for Tobacco Research.

James Kearny, Latham & Watkins, New York City, for Deponent Decker.

### *ORDER*

BOYLE, United States Magistrate Judge.

### *The Procedural History*

By Memorandum Opinion and Order of Arthur D. Spatt, *D.J.*, dated May 25, 1996 ("the Summary Judgment Order"), the Memorandum Opinion and Order of the undersigned dated March 19, 1996, which directed that the defendant Liggett Group Inc. ("Liggett") disclose 123 Special Projects documents, was vacated "so that the court may reconsider the effect of this court's summary judgment decision on the various discovery issues." Memorandum Opinion and Order of the Honorable Arthur D. Spatt, dated May 25, 1996, at 47. The Memorandum Opinion and Order of March 19, 1996 had granted the motion by plaintiffs, Janet and Joseph Sackman (hereinafter called "plaintiffs" or the "Sackmans") to compel production of 123 Special Projects documents after finding that Liggett's assertion of the attorney-client, joint defense, and work product privileges did not preclude production. [Familiarity with the Opinion and Order of March 19, 1996 is assumed herein.]

The Summary Judgment Order of Judge Spatt, *D.J.*, dated May 25, 1996, denied Liggett's motion for summary judgment with

respect to plaintiffs' personal injury claims based on negligence and product liability (Summary Judgment Order at 8–20); dismissed plaintiffs' claims based on breach of warranty (Summary Judgment Order at 20–24); dismissed plaintiffs' fraud claim (Summary Judgment Order at 24–27); and denied dismissal of any derivative claims by Joseph Sackman for "punitive damages, consortium, medical monitoring and fear of cancer" (Summary Judgment Order at 27–28).

The Summary Judgment Order of May 25, 1996, also granted two motions to intervene pursuant to Rules 24(a)(2) and 24(b) of the Federal Rules of Civil Procedure (summary judgment order at 35–47). The Council for Tobacco Research, U.S.A. ("CTR") and the tobacco manufacturing companies, Philip Morris, Inc., Brown & Williamson Tobacco Corp., R.J. Reynolds Co. and Lorillard Tobacco Co. (referred to collectively as "Intervenors") were granted intervention "for the limited purpose of determining whether the 123 (CTR Special Projects) documents at issue (in the opinion and order of the undersigned, dated March 19, 1996) are discoverable." Summary Judgment Order at 47. The district court further directed that "the intervenors be permitted to participate in any further proceedings before Magistrate Judge Boyle regarding these issues." Summary Judgment Order at 48.

By order dated May 31, 1996, the undersigned directed the parties and intervenors to initially address the affect of Judge Spatt's Summary Judgment Order with respect to the issue of relevance. Rule 26(b)(1) Fed. R.Civ.P. Pursuant to the order dated December 5, 1996, the parties submitted supporting papers and briefs on the applicability of the privileges asserted, i.e. attorney-client work product, joint defense and the applicability of the public health and crime fraud exceptions.

### 1. Additional Documents

Since March 19, 1997 Liggett has uncovered 182 additional Special Projects documents that it did not turn over at the time that the privilege log was prepared for the initial 123 documents that were submitted to the Court for *in camera* inspection in 1995. The additional documents have been submitted to the court for *in camera* inspection and have been reviewed by the court, together with the privilege logs.[1]

### 2. Liggett's and Intervenors' Position

Liggett and the intervenors' principal claim of a lack of relevance is based on their assertion that the civil "conspiracy" cause of action ("Eighth Count") was dismissed in the Summary Judgment Order, dated May 25, 1996. The Eighth cause of action alleges that Liggett was a member of a conspiracy—along with other tobacco manufacturers—to suppress medical and scientific data on the health hazards of cigarette smoking and to misrepresent facts "to keep the public ignorant of the hazards of tobacco smoking." First Amended Complaint at paras. 46 and 47. Liggett and the intervenors initially sought to substantiate the dismissal of the Eighth cause of action by a motion to clarify. They claimed that dismissal of the fraud claim encompassed the conspiracy claim. This motion was denied by the district court by order dated *October 10,* 1996, with leave to renew pursuant to Rule 56 of the Federal Rules of Civil Procedure. The latter motion was made and has been denied by Memorandum Decision and Order of Judge Spatt, dated June 9, 1997.

Liggett and the intervenors maintain that even if the conspiracy cause of action remains in the case, the Special Projects documents at issue are still not relevant evidence since (1) the documents contain no concealed scientific findings; and (2) nothing in the documents indicates any attempt to suppress or conceal research concerning the health effects of smoking, or to conceal the source of funding for Special Projects research.[2]

---

**1.** The court received an additional 101 documents on September 18, 1996 and another 81 documents on December 2, 1996.

**2.** Submitted in the intervenors' appendix are "over 100 letters from CTR to Special Project fund recipients advising the latter that if they chose to acknowledge a source of funding, CTR "Special Projects" should be indicated to distinguish the project from those approved by the Scientific Advisory Board. See, Exhibit A annexed to the declaration of Mr. Klugerman.

## DISCUSSION

### I. *The Issue of Relevance*

Rule 26(b)(1) states:

(b) **Discovery Scope and Limits.** Unless otherwise limited by order of the court in accordance with these rules, the scope of discovery is as follows:

(1) **In General.** Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party, including the existence, description, nature, custody, condition, and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of any discoverable matter. The information sought need not be admissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence.

 The purpose of discovery is to "provide both parties with information essential to proper litigation of all the facts." *Mallinckrodt Chemical Works v. Goldman, Sachs & Co.*, 58 F.R.D. 348, 353 (S.D.N.Y. 1973), (quoting *Patton v. Southern Bell Telephone & Telegraph . Co.*, 38 F.R.D. 428 (N.D.Ga.1965) (citing *Hickman v. Taylor*, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947)). The discovery rules "should be interpreted broadly" to achieve the important purposes for which they have been enacted. *Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 756 F.2d 230 (2d Cir.1985). However, "the parties should not be allowed to roam in shadow zones of relevancy and to explore matter which does not presently appear germane on the theory that it might conceivably become so." *In re Surety Ass'n of America*, 388 F.2d 412, 414 (2d Cir.1967). A "threshold showing of relevance must be made before parties are required to open wide the doors of discovery to produce a variety of information which does not reasonably bear upon the issues of the case." *Hofer v. Mack Trucks, Inc.*, 981 F.2d 377, 380 (8th Cir.1992). The

issue of relevance is determined from the "subject matter involved in the pending action," Rule 26(b)(1) Fed.R.Civ.P., "whether it relates to the claim or defense of the party seeking discovery...." *Id. See Fletcher v. Atex, Inc.*, 156 F.R.D. 45, 48 (S.D.N.Y.1994).

 The 305 Special Projects documents involve scientific and medical research projects conducted by Liggett and the intervenors through CTR and its predecessor, The Tobacco Institute Research Center ("TIRC"), which projects were selected to further "the economic interests of the tobacco industry." Memorandum Opinion and Order dated March 19, 1996 at 20.

The plaintiffs have clearly made an adequate threshold showing. These Special Projects documents are relevant to the surviving causes of action of the First Amended Complaint. The third cause of action—for negligence—contains the following allegations:

18. ... Liggett ... "knew or should have known that the inhalation of cigarette smoke by the plaintiff could result in cancer, heart disease and other adverse health consequences.

19. ... Liggett ... had a duty to properly test, research, promote and advertise the cigarettes....

20. ... Liggett ... was negligent in the manner [that] they tested, researched, sold, promoted and advertised the cigarettes....

The fourth cause of action—for negligence in advertising—contains the following allegation:

27. ... [A]dvertisements and promotions for Chesterfield cigarettes ... communicated the message that smoking was healthy, safe and beneficial.

The eighth cause of action—conspiracy to market a defective product—alleges in relevant part:

46. Liggett ... as a member of the tobacco industry was or should have been at all times relevant ... in possession of medical and scientific data indicating that the use of its cigarettes was hazardous to the health of consumers, but because of pecuniary

motives ... ignored and failed to act upon the pertinent medical and scientific data and conspired to deprive the public, and particularly the consumers of the defendant's product, of the pertinent medical and scientific data.

47. Liggett['s] ... failure to communicate to the public scientific facts in its possession, and its collaboration with others in the tobacco industry to misrepresent facts constitute overt actions to keep the public ignorant of hazards associated with tobacco smoking.

The documents at issue are also relevant to the affirmative defenses asserted by Liggett:

1. Liggett's "state of the art" defense that its "products conformed with the state of the art at the time the products were sold...." Answer p. 13, para. 10.

2. Under Liggett's assumption of the risk defense, evidence relating to the concealment of information on the health risk of smoking is a relevant issue of plaintiff's knowing assumption of the health risks.

The Summary Judgment Order of Judge Spatt, dated June 9, 1997, denied Liggett's motion to dismiss Count Eight of the Amended Complaint. That cause of action alleges a civil conspiracy to market a defective product. The Plaintiffs maintain that Liggett possessed medical and scientific research indicative of the health hazards of smoking and, ignoring that data, conspired to (1) deprive consumers and the public of that data; and (2) disseminate, in collaboration with others in the tobacco industry, misrepresentations as to the health risks of smoking in an effort to encourage consumers to buy their product. Amended Complaint at paras. 45–48 (quoted in the Summary Judgment Order of Judge Spatt, dated June 9, 1997 at 4–5.).

In denying Liggett's motion for summary judgment, the district court found, in relevant part, that "Plaintiffs have demonstrated material issues of fact as to Liggett's role in an attempt to conceal information in its possession regarding the health risks associated with smoking as part of a scheme with other tobacco manufacturers, which is evidence of fraudulent conduct." Summary Judgment Order, dated June 9, 1997, at 14–15. The court concluded that the Plaintiffs have come forward with evidence from which a reasonable juror could return a Plaintiffs' verdict as to Count 8.

The 305 Special Projects documents are clearly "relevant to the subject matter involved in the pending action ... [and] appear[ ] reasonably calculated to lead to the discovery of admissible evidence." Rule 26(b)(1) Fed.R.Civ.P. The fact that the documents contain no suppressed scientific findings, and that grant recipients were instructed to indicate CTR "Special Projects" as the funding source, if any source was stated, does not address the issue of relevance. Arguments based on what the documents do not contain are limitless and of little value. The issue is the contents of the documents. These documents consist of communications among in-house and outside counsel of Liggett and the Intervenors concerning the selection and progress of particular scientific and medical research projects funded through the "Special Projects" arm of CTR. Tobacco industry executives in the United States chose to delegate to in-house and outside counsel the task of selecting and monitoring scientific and medical research directed solely to serving the economic interests of the tobacco industry. The member tobacco companies funded these Special Projects through CTR, a non-profit organization ostensibly devoted to independent legal research into the health hazards of tobacco. The regular CTR projects were subject to approval by a Scientific Advisory Board ("SAB") made up of eminent scientists and physicians. Special Projects were not.

These documents are relevant to issues in this litigation, especially the issues raised in the Eighth cause of action of the Amended Complaint. The Court finds that these documents meet the test of relevance under Rule 26(b)(1) of the Federal Rules of Civil Procedure.

## II. *The Privilege Issues*

The court has reviewed the parties' submissions with respect to the privilege and

privilege exception issues. The court adheres to the Memorandum Opinion and Order dated March 19, 1997, which is hereby reinstated as applicable to the 305 Special Projects documents, except with respect to the applicability of the crime-fraud exception, discussed *infra.* While the Intervenors have submitted volumes of materials to the court in the form of declarations and other exhibits, the court's decision herein is based primarily on a review of the documents themselves to which the court has given great weight.

The court has conducted an *in camera* inspection of the additional 182 documents. These documents confirm and further clarify that the Special Projects arm of CTR (and its predecessor, TIRC) was primarily intended to benefit the tobacco industry and its members, as contrasted with the research projects approved by the Scientific Advisory Board ("SAB") of CTR which were selected and funded to benefit public health on the hazards of tobacco smoking.

The Special Projects research discussed in these documents undoubtedly were also of value to Liggett and other member tobacco manufacturers in developing a source of expertise that could also be used in the defense of product liability cases or before legislative hearings. This, however, was merely an incidental benefit.[3] Expert testimony was separately funded through other sources. The additional 182 documents clarify the importance placed by the attorneys in charge of "Special Projects" in publicizing research results. This was done by funding projects where research recipients would publish articles containing industry favorable findings and/or disputing the findings of scientists and physicians whose publicized findings showed a causal nexus between tobacco and disease, or were otherwise unfavorable to the economic interests of the tobacco member companies. Some of the Special Projects involved a reassessment, in the form of a critique, of evidence relating to an unfavorable scientific project that linked smoking to a specific disease. Other projects sought to further the tobacco industry's interests by focusing on projects linking environmental factors and other non-smoking factors, such as air pollution, geographic location, type of employment and place of birth, with the incidence of diseases commonly associated with smoking. A recipient's ability to generate favorable publicity, e.g., through publication and/or speeches were positive factors for consideration in the approval or renewal of funding. *See e.g.,* Documents 127, 129, 132, 140, 141, 164, 165, 166, 171, 175, 176, 191, 192 and 207.

While affidavits were submitted by the Intervenors from Special Projects recipients who also testified in legislative proceedings or in product liability cases on behalf of a cigarette manufacturer, it is undisputed that such testimony was offered pursuant to a separate agreement and was not funded by CTR but rather compensated through Special Account No. 4. *See,* Post-argument letter of Intervenors, dated March 25, 1997, at 2–3; Affidavit of Dr. Sterling at 3–4; Affidavit of Henry Rothschild, M.D. at 9; Affidavit of Bennett Jenson, M.D.; Affidavit of William H. Gotstein, M.D.; Affidavit of Roger L. Bick, M.D.; Affidavit of Arthur Furst (a toxicologist). These instances of testimony are an example of one of the incidental benefits of Special Projects research.

For the reasons set forth above, and as those set forth in the Memorandum Opinion and Order dated March 19, 1997, the court finds that these documents are discoverable and not protected by any privilege.

III. *Reconsideration of the Crime Fraud Exception.*

The Intervenors have made substantial submissions to the court on the crime-fraud issue, including letters sent to Special Projects research recipients, declarations by funding recipients, and declarations from Dr. Glenn (CEO of CTR) and other persons familiar with Special Projects. The Special Projects funded researchers were advised by CTR that the funded project was considered a "Special Project of the Council for Tobacco Research—U.S.A. rather than a grant in aid" and that "[i]f a credit line should be inserted

---

**3.** One attorney commented that a proposal appeared to be of little benefit unless it might be worthwhile for litigation purposes. *See* Document 199.

into any future publications it should be so worded to avoid it being confused with the grant program of the Scientific Advisory Board." Klugman Declaration, Exhibit A; Glenn Transcript, at 382.

This evidence meets the issue of whether CTR and Liggett intended to deceive consumers and the general public through publications by recipients crediting CTR as a source of funding to gain the stature and credibility of CTR's non-profit grant-in-aid projects approved by the Scientific Advisory Board. See, Memorandum Opinion and Order, dated March 19, 1996, at 20.

■ The court has reconsidered this issue in light of the evidence submitted by the Intervenors. As noted in the Memorandum Opinion and Order dated March 9, 1997, at 18, the crime-fraud exception applies to "intentional torts moored in fraud." *Cooksey v. Hilton Int'l Co.*, 863 F.Supp. 150, 151 (S.D.N.Y.1994). A party seeking disclosure under the crime-fraud exception must minimally show "that there is probable cause to believe that a crime or fraud has been attempted or committed and that the communications were in furtherance thereof." *In re Richard Roe, Inc.*, 68 F.3d 38, 40 (2d Cir. 1995); *see also In re John Doe, Inc.*, 13 F.3d 633, 637 (2d Cir.1994); *In re Grand Jury Subpoena Duces Tecum, ("Marc Rich"), Dated September 15, 1983*, 731 F.2d 1032, 1039 (2d Cir.1984).

■ On reconsideration, the court vacates that portion of the prior Memorandum Opinion and Order of March 19, 1996 which found that the crime-fraud exception was applicable. Considering all of the evidence, especially the letters addressed to funding recipients, the court finds that plaintiffs have failed to sustain the high burden of probable cause, which is prerequisite to application of the crime-fraud exception.

The court *sua sponte* has also considered this issue in light of the Decision and Order of Judge Spatt, dated June 9, 1997, which found that the Plaintiffs have come forward with sufficient evidence to sustain a verdict for civil conspiracy to commit fraud in the marketing of a defective product. The burden on a non-movant opposing summary

judgment falls far below the standard of probable cause applicable here. While the 305 documents are important evidence relevant to this cause of action, the court is unable to conclude that the evidence of fraud on the theory of civil conspiracy to make a defective product rises to the quantum of proof required. *In re Richard Roe, supra; In re John Doe, Inc., supra;* and *In re Grand Jury Subpoena ("Marc Rich") Dated September 15, 1983, supra.* For these reasons, the court determines that the crime-fraud exception does not apply.

## IV. *Intervenors' Motion to Strike*

The Plaintiffs submitted evidence on the crime-fraud issue in the form of a deposition, dated November 13, 1996, by John E. Craighead, M.D., a former consultant to the SAB between 1976 and 1977. This deposition was given in another proceeding, *Butler v. Philip Morris, et al.*, Civil Action No. 94–5–53, Circuit Court for the Second Judicial District of Jones County, Mississippi. The Plaintiffs maintain that the Scientific Advisory Board of CTR was diverted from approving independent scientific research through the adverse influence of tobacco industry lawyers. Supplemental Memorandum in Support of Plaintiffs' Motion to Compel, at 6–10.

The Intervenors and Liggett have moved to strike as an Exhibit the deposition testimony of Dr. Craighead on the ground that he lacks competency to testify to this issue (no personal knowledge, Federal Rule of Evidence § 602). Objections of Intervenors, dated February 18, 1997 at 2–4. In addition, the intervenors move to strike several other exhibits on which plaintiffs rely (Exhibits 2, 3, 4, 5 and 6 to their Supplemental Memorandum in the Support of Plaintiffs' Motion to Compel), including a memorandum from a "Mr. E. Pepples" to "Mr. C.I. McCarthy" dated September 29, 1978, which was shown to Dr. Craighead at his deposition in the *Butler* case. See plaintiffs' Supplemental Memorandum in Support of Motion to Compel at 9. [This document had previously been submitted to the Court for review as Exhibit M to plaintiffs' letter brief dated November 21, 1995.]

Intervenors assert that this privileged document was stolen from the Intervenor, Brown & Williamson Tobacco Corporation ("B & W") by a disloyal paralegal who was employed by a law firm representing the tobacco manufacturer. The communication is from outside counsel and addressed to in-house counsel at B & W, and marked "privileged". The paralegal provided the document to his lawyer, Richard Scruggs, for cash and property, and Mr. Scruggs allegedly disseminated the document. Objections of Intervenors at 4 & 6. There does not appear to be a factual dispute that this occurred. The Intervenors' motion to strike Plaintiffs' exhibit 2 is granted. The assertion of privilege by "B & W" is not waived through public disclosure of a stolen privileged document. *Mayman v. Martin Marietta Corp.*, 886 F.Supp. 1243, 1246 (D.Md.1995) (court will not consider records removed without authority on the applicability of the crime-fraud exception); *Smith v. Armour Pharmaceutical Co.*, 838 F.Supp. 1573, 1575–77 (S.D.Fla.1993) (under Florida law a publicly disclosed stolen document does not lose its privileged status.).

The motion to strike in all other respects is denied. The issues raised as to credibility, competence and authenticity go more to the weight of these exhibits. Moreover, the court has not relied on these materials in making the conclusions herein. The issue raised by Plaintiffs of whether the Scientific Advisory Board of CTR was diverted from approving independent research projects on the health hazards of smoking by industry lawyers, is one that is left for another day. The issue is one which the court need not address to determine that these documents should be disclosed.

### V. *Withdrawal of Privilege Assertion*

By letter dated June 16, 1997, the Intervenors (not including "CTR") have advised the court that they have withdrawn their assertion of a joint defense/common interest privilege as to 17 Special Projects documents: Nos. 11, 22, 43, 71, 81, 131, 141, 161, 163, 164, 174, 180, 190, 207, 215, 266 and 301. Since Liggett and CTR have not withdrawn their privilege assertions to these documents they remain under seal and are included within the terms of this order.

### CONCLUSION

For the foregoing reasons, and those stated in the Memorandum Opinion and Order dated March 19, 1997, the court finds that no privilege attaches to the 305 Special Project documents and that the crime-fraud exception is not applicable. The court grants the plaintiffs' motion to compel the production of these documents and directs that, as redacted in accordance with Exhibit A, annexed hereto, they be disclosed. Liggett is also directed to furnish to the Plaintiffs the typed transcripts which the court requested to assist in the reading of documents containing handwritten notes or that were otherwise illegible.

SO ORDERED.

### APPENDIX A—REDACTION

This index identifies those portions of the documents which do not relate to CTR Special Projects and should be redacted prior to production.

Document # 1: redact paragraphs numbered 1, 3, 4*, 5, 6, 7 and 8.

Document # 2: redact beginning on page 2, paragraph entitled "National Association of Broadcasters", through the top of page 3, first full paragraph ending with "promotional purposes".

Document # 4: redact paragraphs numbered 5, 6, 7 and 8 *.

Document # 7: redact paragraphs numbered 1, 3, 4 * and 6, and the final paragraph at RC–60333296.

Document # 8 *: redact items 1–3 at RC–60333297.

Document # 19: redact all material through paragraph "6" at page RC–6033323,

---

* The asterisk denotes a change from the original redaction schedule—Appendix B, dated March 19, 1997. These changes are based on submissions relating to relevance by the Intervenors and/or Liggett.

redact all material at RC–603324 starting with paragraph "Mr. Galloway then...."

Document # 33: redact at RC–6033347 the entire paragraph which starts "Unfortunately...."; and * the last two paragraphs at that page; and items 2 and 6 at RC–603348.

Document # 36: redact from "Mass ..." through to "went to see ..." at RC–6033352.

Document # 51: redact material contained under the headings "National Resources ..." at RC–603374–75; redact at RC–6033377 * all lines except 13–16 "Special Projects" therein; redact the fifth line through the end at RC–6033375; redact all materials at RC–6033377; redact all materials at RC–6033378 through RC–6033381.

Document # 52: redact material contained after listing the attendees at RC–6033382, up to "... Machine" at RC–6033383; and redact all materials at RC–6033384 * and the last 4 lines at RC–6033385.

* Document # 64: redact everything after the first 5 lines at RC–6033403.

* Document # 67: redact the first three paragraphs at RC–6033407.

* Document # 88: redact the second paragraph at RC–6033440.

* Document # 101: redact item 2 at RC–6033467.

Document # 102: redact all paragraphs following the fifth line of the body of the letter at RC–6033468; redact entire page at RC–603369; redact at RC–6033475 all material "2," * "3" and "4" ending at RC–6033476; redact all materials at RC–6033477.*

Document # 109: redact all paragraphs except "8" at RC–6033450.

Document # 110: redact all materials under the heading "IV–10" at RC–6033491.

* Document # 111: redact pages RC–6033514 through 21.

* Document # 112: redact everything except the lines "CTR Special Projects" and the corresponding figures to the right at RC–6033522.

Document # 113: redact pages * RC–6033524–25 (except "Public Relations" and

material thereunder) contained under the headings labeled I, II, III at RC–6033526–RC–6033531; * redact the ninth line of RC–6033530 through RC–6033532; redact RC–6033533; redact all except materials 2 under RC–6033535; and redact the second line through the end at RC–6033536.

Document # 114: redact material commencing five lines from the bottom at RC–6033537 through eight lines at the top of RC–6033538 * and lines 9–13; redact the last 4 lines at RC–6033539; redact beginning at seven lines down at RC–6033540 through six lines down at RC–6033541 * and lines 9 to the end of the page; and redact all of RC–6033542.

Document # 115: * redact the paragraph following "Ed Jacob" at RC–6033543; redact pages RC–6033544–45; redact lines 8–18 on RC–6033456; redact material beginning eight lines from the top at RC–6033547 through the end of RC–6033548; * redact all materials at RC–6033549.

Document # 116: redact material beginning nine lines from the bottom at RC–6033550 through the remainder of the document, * except RC–6033554 where only lines 9–10 should be redacted and at RC–6033555 only the last 7 lines should be redacted.

Document # 117: redact all material except last nine lines at RC–6033558 * through RC–6033560; * the last eight lines at RC–6033561.

Document # 118: redact last five lines at RC–6033562 through RC–6033566 *; redact all of RC–6033567.

Document # 119: redact item 1 at RC–6033568; the first 10 lines on RC–6033569; redact material starting paragraph numbered 2 at RC–6033570 through RC–6033572; * redact lines 5–17 and first four lines at RC–6033573; redact item 8 at RC–6033575 and redact material contained under paragraphs numbered 6, 7, 9, 10, 11, 12 and 13A * in addition to the last five lines from the bottom at RC–6033577, and redact RC–6033578.

Document # 120: redact all material contained in Agenda 4 at RC–6033579; redact page RC–6033580; Agendas 2 and 3 at RC–

6033581; redact the entire page at RC–6033582; redact items 2–8 at RC–6033583.

Document #121: redact all material at RC–6033584 except lines four and five from the bottom; redact lines 2–14 at RC–6033585; at RC–6033585 redact all except lines two to fourteen; at RC–6033586 redact all except the last nine lines; and redact items 1–5 at RC–6033587.

Document #122: redact all except material contained under paragraph labeled 8 at RC–6033593.

Document #123: redact all material, except last * two lines at RC–6033597.

*Documents Produced After the Opinion and Order dated March 19, 1997*

* Document #134: redact entire document (SACK 1000019).

* Document #135: redact first fill paragraph at the top of SACK 1000021 which begins "You also previously approved...."

* Document #151: redact entire document.

* Document #168: redact the second paragraph at SACK 1000067.

* Document #211: redact entire document SACK 1000035–36.

* Document #214: redact first paragraph and following quote.

* Document #220: redact all materials at SACK 1000147–50 except #5 entitled "CTR Special Projects" at 1000148.

* Document #221: redact all materials at pages SACK 1000156 through 59.

* Document #223: redact all of SACK 1000163 except item 12.

* Document #224: redact all at SACK 1000165.

* Document #237: redact lines 7–16 at SACK 1000186; lines 1–4 and 6–12 at SACK 1000187; and all of SACK 1000188.

* Document #263: redact lines 2–14 and 20–21 at SACK 1000232 and lines 1–14 at SACK 1000233.