**David BURTON, Plaintiff,**

v.

**R.J. REYNOLDS TOBACCO COMPANY, INC., et al., Defendants.**

**No. 94–2202–JWL.**

United States District Court, D. Kansas.

Aug. 14, 1997.

Kenneth B. McClain, Gregory Leyh, Nicholas E. Mebruer, Humphrey, Farrington & McClain, Independence, MO, for Plaintiffs.

M. Warren McCamish, Williamson & Cubbison, Kansas City, KS, Junius C. McElveen, Jr., Jones, Day, Reavis & Pogue, Washington, DC, Sydney Bosworth McDole, William E. Marple, Thomas C. Pavlick, Clay Alfred Hartmann, Jones, Day, Reavis & Pogue, Dallas, TX, Stephen J. Kaczynski, Michael A. Nims, Paul G. Crist, Jones, Day, Reavis & Pogue, Cleveland, OH, for R.J. Reynolds Tobacco Company.

James D. Griffin, James M. Warden, Blackwell, Sanders, Matheny, Weary & Lombardi, L.L.P., Overland Park, KS, Bruce G. Sheffler, James Mirro, Peter K. Eck, Nicholas Booke, Chadbourne & Parke, L.L.P., New York, NY, for The American Tobacco Company.

## MEMORANDUM AND ORDER

NEWMAN, United States Magistrate Judge.

This matter is before the court upon the motion of defendant R.J. Reynolds Tobacco Company ("RJR") (doc. 269) for an order reconsidering the court's order of February 3, 1997, related to the court's review of thirty-three Council for Tobacco Research ("CTR") Special Projects documents which had been withheld due to a claim of attorney-client privilege or work product immunity.[1]

A motion to reconsider is not of statutory derivation, but rather is found in D. Kan. Rule 7.3 which provides:

> A party may file a motion asking a judge or magistrate judge to reconsider an order or decision made by that judge or magistrate judge. Such motion shall be filed within ten days after the entry of the order or decision unless the time is extended by the court. A motion to reconsider shall be based on (1) an intervening change in controlling law, (2) availability of new evidence, or (3) the need to correct clear error or prevent manifest injustice.

Whether to grant or deny a motion for reconsideration is committed to the court's discretion. *Hancock v. City of Oklahoma City,* 857 F.2d 1394, 1395 (10th Cir. 1988). A motion to reconsider gives the court the opportunity to correct manifest errors of law or fact and to review newly discovered evidence. *Committee for the First Amendment v. Campbell,* 962 F.2d 1517, 1523 (10th Cir.1992). A motion to reconsider is appropriate if the court has obviously misapprehended a party's position, the facts or applicable law, or if the party produces new evidence that could not have been obtained through the exercise of due diligence. *Voelkel v. General Motors Corporation,* 846 F.Supp. 1482 (D.Kan.1994); *Major v. Benton,* 647 F.2d 110, 112 (10th Cir.1981).

---

1. RJR does not seek reconsideration of the court's decision as to the redacted documents contained in Tabs 1–9.

It also affords the court the opportunity to prevent manifest injustice. *Zimmerman v. Sloss Equipment, Inc.,* 835 F.Supp. 1283 (D.Kan.1993). "A motion to reconsider is not a second chance for the losing party to make its strongest case or to dress up arguments that previously failed." *Voelkel,* 846 F.Supp. 1482 (citing *OTR Driver at Topeka Frito–Lay, Inc.'s Distribution Center v. Frito–Lay, Inc.,* 1993 WL 302203 [D. Kan.] ). An improper use of the motion to reconsider "can waste judicial resources and obstruct the efficient administration of justice." *United States ex rel. Houck v. Folding Carton Administration Committee,* 121 F.R.D. 69, 71 (N.D.Ill.1988).

RJR does not cite or argue the standards for reconsideration or the applicability of such standards to the issues before the court. Rather, RJR simply argues that the court's decision is in error. Since RJR does not identify any intervening change in controlling law or newly available evidence, the court assumes that the issue is one directed toward correcting "clear error" or "to prevent manifest injustice."

■ RJR's first argument is directed toward reference in the court's order to the decision of Magistrate Judge Boyle in *Sackman, et al. v. Liggett Group, Inc.,* 920 F.Supp. 357 (E.D.N.Y.1996). RJR properly points out that there is no reference in the court's order to the fact that the opinion of Judge Boyle was vacated by the district judge on May 25, 1996. See *Sackman, et al. v. Liggett Group, Inc.,* 167 F.R.D. 6 (E.D.N.Y.1996). The court was aware of the vacation of the opinion and erred in not so noting. The court, however, did not cite the *Sackman* opinion as precedent on which the court was relying in determining the issues. The court simply noted that a review of the documents in this case confirmed the finding of the *Sackman* court that the work product doctrine was not applicable to documents related to CTR Special Projects because "the motivation behind the special projects was public relations rather than research for use in litigation."[2] The decision of the court in *Sackman* played no role in the court's decision in this case. The court's decision would

have been the same, notwithstanding. It is important to note that the *Sackman* decision was not vacated due to substantive error. It was vacated to allow certain intervenors, including RJR, to be heard on issues of attorney-client privilege and work product immunity then before the court, as the intervenors claimed that they jointly held the privileges in issue. After considering the arguments of the intervenors and reviewing 182 additional documents, the court reaffirmed its prior decision. See *Sackman, et al. v. Liggett Group, Inc.,* 173 F.R.D. 358, 1997 WL 391633 (E.D.N.Y.1997). Since counsel have not advised the court as to whether any of the documents reviewed by this court were reviewed by Judge Boyle, the court does not believe that the *Sackman* case is controlling herein. The court did not rely on the *Sackman* decision in its determination of the original issues herein. Consequently, the citation error is not a basis for reconsideration.

The court, however, notes the recent findings by Judge Boyle, after his second review of CTR documents and after considering the arguments of RJR and others. Judge Boyle stated:

> These documents confirm and further clarify that the Special Projects arm of CTR (and its predecessor, TIRC) was primarily intended to benefit the tobacco industry and its members, as contrasted with the research projects approved by the Scientific Advisory Board ("SAB") of CTR which were selected and funded to benefit public health on the hazards of tobacco smoking.
>
> The Special Projects research discussed in these documents undoubtedly were also of value to Liggett and other member tobacco manufacturers in developing a source of expertise that could also be used in the defense of product liability cases or before legislative hearings. This, however, was merely an incidental benefit. Expert testimony was separately funded through other sources. The additional 182 documents clarify the importance placed by the attorneys in charge of "Special Projects" in publicizing research results. This was done by funding projects where research

---

2. See *Burton v. R.J. Reynolds Tobacco Company, Inc., et al.,* 170 F.R.D. 481, 490 (D.Kan.1997.)

recipients would publish articles containing industry favorable findings and/or disputing the findings of scientists and physicians whose publicized findings showed a causal nexus between tobacco and disease, or were otherwise unfavorable to the economic interests of the tobacco member companies. Some of the Special Projects involved a reassessment, in the form of a critique, of evidence relating to an unfavorable scientific project that linked smoking to a specific disease. Other projects sought to further the tobacco industry's interests by focusing on projects linking environmental factors and other non-smoking factors, such as air pollution, geographic location, type of employment and place of birth, with the incidence of diseases commonly associated with smoking. A recipient's ability to generate favorable publicity, e.g., through publication and/or speeches were positive factors for consideration in the approval or renewal of funding.

*Sackman, et al., v. Liggett Group, Inc.,* 173 F.R.D. 358, 363.

A review of the documents before this court confirms the above findings by Judge Boyle.

RJR argues that the court failed to mention the recent case of *Allgood v. R.J. Reynolds Tobacco Co.,* 80 F.3d 168 (5th Cir.1996), *cert. denied,* —— U.S. ——, 117 S.Ct. 300, 136 L.Ed.2d 218 (1996). The reason for its exclusion from the court's memorandum is that the case is inapplicable to the issues before the court. Contrary to RJR's representation to the court that the case affirmed that "the crime-fraud exception did *not* apply to CTR Special Projects documents of the type before this court," the court in *Allgood* rejected the plaintiffs' argument that a determination by one district court should bind another district court reviewing similar issues and held that there had been no abuse of discretion when the trial court had not reached the same conclusion as that reached by the court in *Haines v. Liggett Group, Inc.,* 140 F.R.D. 681 (D.N.J.1992). *Allgood,* 80 F.3d at 172. The case is not only inapplicable to the facts

before this court, but does not stand for the proposition cited.

RJR also objected to the court's failure to reference *Haines v. Liggett Group, Inc.,* 975 F.2d 81 (3rd Cir.1992), claiming that it is the leading case addressing CTR Special Projects. While the case contains a lengthy factual and legal history of the issues before the court, the case stands for the proposition that a review by a district judge of a nondispositive matter decided by a magistrate judge must be reviewed solely on the record before the magistrate judge. The district judge had considered matters outside the record. While the court cites much law concerning attorney-client privilege and the crime-fraud exception thereto, it simply reversed the trial court for its consideration of the extraneous matters and remanded the case for a new determination. The appellate court's decision does not contribute to a determination of the issues before the court. Likewise, this court conducted its own review of the documents submitted *in camera.* It is not bound by the determination of the special master in the *Haines* case.

RJR's next argument is that under the referral order of United States District Judge John Lungstrum, the court was directed to determine whether the documents contained evidence that defendants knew that nicotine was addictive and failed to disclose that information. RJR asserts that as to the thirty documents in which the court found no reference to RJR's knowledge of the addictive qualities of nicotine, the court's inquiry should have been concluded and the court should not have considered whether the documents it reviewed were in fact protected from discovery by the attorney-client privilege or work product immunity. Judge Lungstrum's order provided that the subject documents were to be delivered to the magistrate judge for *in camera* review. It also provided that the motion to compel was referred to the magistrate judge for his determination, subject to the terms of the order.[3] RJR attempted to raise this same issue with Judge Lungstrum prior to the *in camera* review by a motion for reconsideration apparently having concern about the scope of

---

**3.** Judge Lungstrum denied the motion to compel as to defendant American Tobacco Co.

such review. Judge Lungstrum clearly indicated that the *motion* was referred to the magistrate judge.[4] The magistrate judge was not ordered to simply conduct the *in camera* review. Judge Lungstrum made preliminary findings as to attorney-client privilege and work product immunity based upon the representations of counsel. He did not, however, see the documents. In essence, RJR suggests that this court should blindly accept a finding by Judge Lungstrum which had been made on the representations of counsel concerning the characterization of the documents notwithstanding the content of the documents themselves. This court cannot close its eyes to the content of the documents which it has been asked to review under the motion to compel, nor can it be expected to view the documents with restricted vision. When it is apparent to the court from an examination of the documents, considering the privilege log, the *in camera* memorandum, as well as the other memoranda of the parties, that the documents are not protected by attorney-client privilege or work product immunity, the court must enter an appropriate order. The suggestion of RJR that the magistrate judge should ignore all aspects of the documents except whether they contain evidence of RJR's knowledge of the addictive qualities of nicotine and RJR's failure to disclose such information, would be contrary to any judicial officer's responsibility in an examination of evidence before the court. The court does not believe that Judge Lungstrum so intended. Had he intended only a referral for *in camera* review rather than a referral of the motion, he would have so stated in his order. In either instance, the court would have felt obligated to report its findings to the district judge.

■ As to the three documents which the court found may contain evidence of knowledge by RJR of the addictive qualities of nicotine, RJR argues that the court erred in ordering them disclosed without a finding that there was also evidence in the document of concealment of that knowledge. The court does not interpret Judge Lungstrum's order as narrowly as does RJR. This is discovery. The court does not have access to all the other evidence in the case. Frequently, all of the evidence on an issue will not be contained in one document. Evidence of knowledge of the addictive qualities of nicotine might be found in one document while concealment of that knowledge may be found in other evidence. Knowledge of the addictive qualities of nicotine in 1967, 1978 and 1981, absent a disclosure, may create an inference of concealment, dependent upon other facts and circumstances not revealed in the documents produced, but ultimately derived therefrom. While Judge Lungstrum used the conjunctive term rather than the disjunctive term, the court interpreted the order in the context of discovery based upon the court's practical experience.

■ The court has again reviewed the documents in issue, Tabs 21, 23 and 32. The court reaffirms its original findings as to each of these documents. Tab 21 is a document dated September 25, 1967, which purports to be minutes drafted by an RJR employee and sent to in-house counsel, of a meeting of the Industry Technical Committee with representatives from the Council for Tobacco Research. RJR argues that these minutes do not evidence knowledge by RJR of the addictive qualities of nicotine. Rather, they reference studies performed by an entity other than defendant, the results of which were later published in the Journal of Applied Physiology. While RJR may have accepted or rejected the results of the studies, it had knowledge of the results. In one instance, the minutes reflect that an RJR representative visited a study site and reported his impressions of the ongoing study. The minutes clearly reflect not only a report on the studies in question but also imply prior accepted knowledge by RJR of the addictive qualities of nicotine in human beings. Further, the court's referral order did not require that whatever knowledge defendant may have had of the addictive qualities of nicotine be the result of a study by RJR, CTR, or one commissioned by either of them.

■ The court also notes RJR's argument that the minutes make reference to "habituation" rather than "addiction" and,

---

4. Transcript of Telephonic Hearing on June 17, 1996, at p. 15.

therefore, concludes the court erred in its finding that the document may provide evidence of knowledge that nicotine may be addictive. The same argument was presented to Judge Lungstrum who deferred a determination of such argument. The court believes that the dispute concerning the use of these terms is not a controlling issue for discovery purposes. Practically, the terms "habituation" and "addiction" are similar concepts. The use of the term "habituation" may be evidence of knowledge of "addiction," dependent upon the context and the protocols of RJR.

As with Tab 21, Tab 23 reports studies performed by others. The court reviewed the document provided for *in camera* review. It did not have access to the public paper to which RJR has made reference in its present memorandum, nor was such paper within the scope of the court's review. Further, the court finds the characterization of the results of the reported studies as represented by RJR in its memorandum is not supported by the document contained in Tab 23. Notwithstanding, the document contains evidence of knowledge by RJR of the addictive qualities of nicotine in 1981.

RJR argues that the court erred in its finding that Tab 32 reflects knowledge by RJR that nicotine is addictive. The court's actual finding was that the document "may contain evidence which may be relevant to the issue of RJR's knowledge of the effects of nicotine and RJR's actions or contemplated actions related thereto." *Burton v. R.J. Reynolds Tobacco Company, Inc.,* 170 F.R.D. at 490 (D.Kan.1997). Nevertheless, in the court's summary of all of its findings, the court concluded that the document in this tab along with Tabs 21 and 23 "may contain evidence that RJR knew, during the relevant time period, that nicotine was addictive." *Id.* This latter statement of the court's finding is in error and should be reconsidered. This document does not contain evidence of knowledge on behalf of RJR related to the addictiveness of nicotine. It does contain information related to contemplated actions by RJR and/or the tobacco companies with respect to the effects of nicotine.

The next argument of RJR is that this court erroneously held that joint defense communications are not privileged. This was not the holding of the court. The court recognized the joint defense in applying principles related to attorney-client privilege and work product immunity throughout the court's opinion. The court applied the privileges without regard to the fact that counsel and employees from multiple tobacco companies received copies of many of the documents reviewed. The court did not find, in any instance, a waiver of either privilege, much less a waiver because of a disclosure of a protected communication to persons other than the attorney and client. This argument is without merit and does not reflect the court's findings.

RJR argues that the court erroneously held that communications related to scientific issues between an attorney and client are not privileged. The court did not find that the documents were not protected simply because they dealt with scientific issues. The court accepts the proposition that there may be privileged communications between an attorney and client which deal with scientific issues or subject matter. However, the attorney-client privilege and work product immunity are doctrines, the scope of which are carefully defined and limited. Not every communication between an attorney and client is privileged, only confidential communications which involve the requesting or giving of legal advice. *Fisher v. United States,* 425 U.S. 391, 403, 96 S.Ct. 1569, 1577, 48 L.Ed.2d 39 (1976); *United States v. Olano,* 62 F.3d 1180 (9th Cir.1995). Likewise, not every document generated by an attorney is protected by work product immunity. *Simon v. G.D. Searle & Co.,* 816 F.2d 397 (8th Cir.1987). The court will not recite the rules previously set out in its prior opinion. The court has previously discussed the basis for its decision on each document and, in no case, did the court rule that there was no attorney-client privilege solely because the subject matter of the communication was scientific. Each document was reviewed in context. An analysis of scientific data may be the subject of a privileged communication. To establish that such communications are protected by the attorney-client privilege

there must be a connection between the scientific information which is the subject of the communication and the rendering of legal advice. This is the missing link in most of the communications before the court. In the instances where attorney-client privilege was claimed, the subject matter of the communication was not related to seeking or giving legal advice. There was no reference to legal advice. Where work product immunity was claimed, there was a lack of any relationship between the scientific analysis and any identifiable litigation, including the multiple ongoing tort cases. The documents themselves reveal no reference to litigation. The arguments of counsel have reflected none. The fact that RJR was involved in tobacco litigation at the same time the documents were generated does not make all the documents generated by or for its attorneys subject to work product immunity. A party claiming work product immunity must still establish the underlying nexus between the preparation of the document and the specific litigation. There is no such nexus between the reviewed documents and pending litigation.

■ RJR argues that the court erred in finding that the documents for which work product immunity was claimed were not so protected claiming that the purpose of the CTR Special Projects was to develop research data that could be used to defend the industry in court. The court, however, has again reviewed the documents and finds that they reflect no relationship to litigation, much less specific litigation. There is no evidence in any of the documents that they were prepared with specific litigation in view or, otherwise, with litigation as a consideration. The documents themselves do not indicate that the studies involved were related to litigation.

While other courts may have accepted defendant's arguments that the CTR Special Projects documents relate to current or anticipated litigation, the court's review of the documents presented for *in camera* inspection is inconsistent with such a finding. Perhaps there are Special Projects documents which are related to litigation, but the documents presented to the court are not. Cer-

tain of the documents are related to the funding of grants to counter published scientific research. Others relate to the funding of grants proposed by scientists seeking money for their own proposed projects. Still other documents are drafts of an industry response to a published report by the Tobacco Group of the European Economic Community. One of the documents contains notes outlining the purposes of the CTR which include public relations, public spokesman, introduction to witnesses as well as being a vehicle for special projects. Within the same notes, the types of research conducted by the CTR are described as directed practical research, program research, and public relations. None of the research is described as litigation related.

There is no doubt that RJR was involved in extensive litigation throughout the period in question, but the tendered documents are unrelated to that litigation. The court acknowledges that RJR was undoubtedly aware that it would be sued in future actions, however, such is not a sufficient basis to establish work product immunity for all scientifically related documents generated by or for attorneys.

RJR argues that Judge Lungstrum has already determined that the documents are privileged. However, Judge Lungstrum made his determination on the statements of counsel and did not have the benefit of a review of the documents in issue. Judge Lungstrum relied on the representations of counsel, which were clearly contrary to any reasonable application of the attorney-client privilege or work product doctrine.

The court has noted the reference in plaintiff's memorandum in opposition to the motion [5] to Judge Lungstrum's finding that the subject documents "would be relevant to this case to the extent plaintiff could link the documents to a showing that the Defendant Reynolds knew during the relevant time period that nicotine is addictive, that its cigarettes are a vasoconstrictor, or that its cigarettes caused peripheral vascular disease." Plaintiff suggests that the referral included an *in camera* inspection to determine wheth-

**5.** At p. 6.

er the documents contained references to knowledge of defendant that its cigarettes are a vasoconstrictor, or that its cigarettes cause peripheral vascular disease. The *in camera* inspection ordered by Judge Lungstrum did not include such a directive. Judge Lungstrum's determination as to the *in camera* inspection is found at page 16 of his Memorandum and Order which provides "... the court deems it necessary to conduct an *in camera* review of Defendant Reynolds' 33 allegedly privileged CTR Documents to determine whether any of them indicate that defendants knew during the relevant time period that nicotine was addictive and failed to disclose that information despite the CTR's public representation that it would make such disclosures to the public." This is the *in camera* review which the court conducted. To the extent that the court was expected to review the documents as suggested by plaintiff, the court did not conduct such a review prior to the entry of the order which is the subject of RJR's motion for reconsideration. In light of the court's finding that all of the documents, except Tab 4, are not protected by attorney-client privilege or work product immunity, such a review is not required.

RJR also filed a motion requesting that it be permitted to submit additional materials and to present argument under seal *in camera* (doc. 267). Plaintiff's motion to compel placed the issues before the court. RJR had an adequate opportunity to address the issues. It provided a privilege log to the court as well as its arguments supporting the privilege. The court accepted and considered an *in camera* memorandum concerning the nature of the subject documents and arguments related to the claimed privileges. The matters RJR now seeks to present were known at the time it responded to the motion to compel and when it filed the original *in camera* memorandum. Defendant has had an ample opportunity to present whatever evidence and argument was available to support its position. The court has allowed adequate opportunity for submission of *in camera* materials as required under *United States v. Zolin*, 491 U.S. 554, 109 S.Ct. 2619, 105 L.Ed.2d 469 (1989). While defendant claims that the magistrate judge exceeded the order of referral, the court believes that it complied with that order. Perhaps RJR misconstrued the court's order. Such error by RJR does not state grounds for allowing the proposed submission. A motion to reconsider is not a vehicle for a second opportunity to present evidence or arguments not previously made. Notwithstanding, the court has reviewed the materials attached to the memoranda filed by RJR related to its motion for reconsideration and reaffirms its original decision.

In summary, the Motion of R.J. Reynolds Tobacco Company for Leave to Submit Additional Materials and to Present Argument Under Seal In Camera (doc. 267) is overruled. The Motion of R.J. Reynolds Tobacco Company for Reconsideration of Magistrate Judge's 2/3/97 Memorandum and Order (doc. 269) is overruled in part, granted in part, as set out herein. The documents shall be produced within 10 days of the date of the filing of this order unless a timely motion for review is filed.

**IT IS SO ORDERED.**